# FRANKLIN COUNTY,

## January Term, 1867.

[ Continued from *ante*, page 298.]

---

Elias Burnell, *Administrator of* Mitchel Russell, *v.* Thomas Maloney.

*Boundary Line.  Adverse Possession.  Estoppel.  Reversal of Judgment.  Motion in Arrest.  Practice.*

Where a surveyor is employed by adjoining owners to run a line between their lands, about which there is no controversy, but which had never been run, but the parties know and agree that there should be one hundred and fifty acres on one side of it, between it and other lines about which there is no dispute, and runs the line too far to the right or left by mistake, it is *held* that such a transaction is not conclusive upon the parties to it.

When two adjoining owners agree between themselves that a line to which they are both occupying is not the true line, or are uncertain about its accuracy, and agree that their lines shall be run at a convenient time, and when the true line is ascertained, that it shall be the line between them, then the one in possession of the land of the other is there by their mutual assent and agreement, and not adversely within the meaning of the law.

If an owner of a piece of land point out a line as his boundary line to a party proposing to purchase an adjoining piece, but in making the purchase the party does not rely or act upon what was told him, the other party is not estopped from claiming beyond that line.

That the party to whom representations are made, should rely and act upon them, is indispensable to the creation of an estoppel of this character.

The principle is well settled that when the rulings of the county court are erroneous on some points, if correct rulings on the same points would necessarily have produced the same result, the supreme court will not reverse the judgment for such errors.

Where in ejectment the verdict is for the seizen and possession and nominal damages only, the fact that a small piece of land is covered by the verdict, that the defendant is not in possession of, cannot prejudice the defendant because he has no claim to it, and a motion in arrest on that account cannot prevail.

ACTION OF EJECTMENT.  Plea, general issue, and trial by jury at the April Term, 1866, STEELE, J., presiding.  Verdict for the plaintiff for the premises demanded, and nominal damages.

The question in dispute was with regard to the division line between the plaintiff's and defendant's land.  They both own part of Marvin's gore in Highgate, by title derived from one source.  This gore is a triangle.  The plaintiff's deed covers the south part, commencing at the base and taking the whole triangle far enough north to give him one hundred and fifty acres, the north line to be parallel with Highgate town line.  The defendant's land adjoined the plaintiff's on the north.  The plaintiff claimed that the defendant occupied south so far as to encroach upon his one hundred and fifty acres a distance of twenty-two rods.  The line to which the defendant occupied is well marked, and has existed since the fall of 1833, and was then run by one Saxe, on the north line of the one hundred and fifty acres, by the procurement of one Withers who then owned and occupied that part, and from whom the plaintiff derives title, and of one Bebee who owned and occupied the north part, and of one Wood who had the record title of the whole, and who afterwards reacquired the entire ownership of Bebee's part, and from whom the defendant derives title.  The defendant claimed to have acquired title up to the Saxe line by virtue of the statute of limitations.

In the course of the trial the defendant's counsel remarked that there was no question about possession ; that the defendant conceded that he was in possession to the Saxe line, in accordance with his deed.

The tendency of the evidence as detailed in the exceptions is set forth in the opinion of the court.

The plaintiff claimed nominal damages.  The court told the jury in the course of the charge that if their verdict should be for the plaintiff it would be "for the seizen and possession of the premises demanded, nominal damages and costs ;" also, " if you find that the plaintiff's land is deficient, no question is made but the deficiency is occupied by the defendant."  No exceptions were taken to these instructions, or requests made for any different instructions.  After the verdict was rendered, and the jury were dismissed, a motion

to set aside the verdict was filed. On the attention of the court being thus called to the subject, it became apparent from the testimony of Daniel Maloney and the deeds, that the defendant is not, and never was, in possession of the whole width of the gore north of the Saxe line, but one side of the north part is owned and occupied by others, and adjoins the plaintiff's land, as the defendant's land adjoins the plaintiff's. The court overruled the motion,— exceptions by the defendant.

*H. S. Royce*, for the defendant.

*L. E. Patten* and *H. A. Burt*, for the plaintiff.

The opinion of the court was delivered by

PIERPOINT, Ch. J. It is insisted on the part of the defendant that what took place between Withers, Bebee and Wood, who were the owners of the entire gore in 1833, at the time the Saxe line, so called, was run, was conclusive upon them, and those who subsequently took title under them, and established the said Saxe line, as the true north line of the one hundred and fifty acre piece, now owned by the plaintiff.

The principle seems to be established in several of the neighboring states, that when there is a disputed, indefinite or uncertain boundary line, between the lands of adjoining proprietors, they may by agreement fix upon and establish a line between them, that when so established shall be conclusive upon them, and all claiming under them. The correctness of this principle we have now no occasion to consider, as it is quite clear that the facts of this case, as developed in the bill of exceptions, do not bring the case within that principle. There was no dispute about the north line of the one hundred and fifty acre tract ; there was nothing indefinite about it, and no uncertainty as to it, except that which resulted from the fact that it had never been run. There was no controversy about the lines and boundaries of the gore ; these seem to have been perfectly understood by all the parties, and were acquiesced in ; all agreed that Withers was entitled to one hundred and fifty acres to be taken off

the south end of the gore, by a line to be run parallel with the south line thereof. All that the parties attempted to do on the occasion referred to was, to run that line ; in running it, Saxe, the surveyor, by mistake run it too far south, so that it did not give Withers the one hundred and fifty acres, to which he was entitled. We think it has never been held that such a transaction is conclusive upon the parties to it.

The evidence on the part of the defendant tended to show, that after this line was run, the then owners of the land, and their subsequent grantees, occupied their several parts, acquiescing in this line, and claiming to it, as their line of division, for more than fifteen years successively. If this was so, their respective possessions would have ripened into title, and have established the Saxe line as the actual line of division.

The plaintiff introduced evidence tending to show that prior to April, 1837, and after Mitchel Russell, under whom the plaintiff claims, had acquired title to the one hundred and fifty acre piece, and his brother Lawrence Russell, under whom the defendant claims, had obtained the title to the remainder of the gore, they ceased to regard the Saxe line as the true line between them, and agreed to have a new survey made, with the understanding, that if on such a survey it should turn out that the Saxe line was not correct, a new line should be made that would be so. Now if the fact was as this testimony tended to show, and Mitchel Russell and his brother entered into such an arrangement, although neither of them changed the extent of their possession, the effect would be to entirely change the character of their possessions, in respect to that of each being adverse to that of the other, so as to bring them within the operation of the statute. They would then be in possession, not adversely, each claiming to the Saxe line, but each would be in possession according to their deeds claiming to the true line, and in accordance with the mutual arrangement between them.

This is not at variance with the principle, that when one is in the adverse possession of land claiming to a particular line, another can not by claiming title to the same land, or disputing the title of the occupant, or denying the correctness of the line to which he claims'

or by anything else he may *say* on the subject, vary that possession so as to prevent the operation of the statute. But when two adjoining land owners agree between themselves that a line to which they were both occupying, is not the true line, or are uncertain about its accuracy, and agree that the lines shall be run at a convenient time, and when the true line is ascertained, that it shall be the line between them, the case is different. Then the one who is in the possession of the land of the other is there by their mutual assent and agreement and not adversely within the meaning of the law.

Whether such an agreement was entered into between Mitchel and Lawrence Russell, as the plaintiff's evidence tended to show, was a question for the jury. It was submitted to them by the court under a charge as favorable for the defendant as he had a right to ask, and the jury have determined it in favor of the plaintiff.

It is insisted by the defendant that the evidence introduced by the plaintiff had no tendency to establish such an agreement; we think it had, and that the court was right in submitting it to the jury.

It is further insisted by the defendant that what took place between Mitchel and Lawrence Russell while Mitchel was the owner of the one hundred and fifty acre piece, and when Lawrence was negotiating for the purchase of the remainder of the gore, as to where Mitchel's line of the one hundred and fifty acre piece was, estops Mitchel Russell, and those claiming under him, from setting up any claim to land north of the Saxe line.

The case shows that before Lawrence Russell purchased the remainder of the gore, he and his brother Mitchel went on to the land. Lawrence then knew that Mitchel owned one hundred and fifty acres of the south end of the gore, and Mitchel pointed out to him the Saxe line, and told him it was the north line of his one hundred and fifty acre piece, and advised him to buy the remainder, which he subsequently did; but the case is entirely barren of any evidence tending to show that in making the purchase, Lawrence in any degree relied or acted upon what Mitchel told him, as to the line of his one hundred and fifty acre piece. So far as the evidence tends to show anything on this point, it is, that he did not rely upon it, as we find them soon after entering into an agreement to have the

line run with a view of establishing it where it ought to be.   If Lawrence did not act upon the representations of Mitchel, then Mitchel is not estopped by reason of what he said.   That the party to whom representations are made should rely and act upon such representations is indispensable to the creation of an estoppel of this character.   In this all the authorities agree.

This view of the case renders it wholly immaterial whether the county court erred or not in the view it took of it, and in submitting the question of a waiver of the estoppel to the jury, for if the court below erred the error was in favor of the defendant.

The county court seem to have considered the party as estopped, and submitted the question to the jury as to the estoppel having been waived under instructions as to what would constitute a waiver; the jury must have found that the estoppel was waived.

Had the county court decided, as we think it should have decided, as a matter of law, that, conceding all to be true, that the evidence on this point tended to establish, the party was not estopped, the result must inevitably have been the same.

The principle is well settled that when the rulings of the court below are erroneous on some points, if correct rulings on the same points would necessarily have produced the same result, this court will not reverse the judgment for such errrors.

The motion in arrest was properly overruled.   The concession made by the counsel for the defendant that he was in possession to the Saxe line, according to his deed, was understood by the court and the parties as an admission that he was in possession of the premises described in the plaintiff's writ; it was so treated on the trial, and in the charge of the court, and no exception was taken thereto.   The damages assessed by the jury were only nominal.   The fact that a small piece of land is covered by the verdict, that the defendant is not in possession of cannot prejudice the defendant because he has no claim to it.   The person who has a claim to it is not prejudiced by the verdict, because he is not a party to the suit.

Judgment of the county court is affirmed.