McNamee v. Moreland.

---

McNamee v. Moreland *et al.*

1. Adverse possession: STATUTE OF LIMITATIONS. A party relying upon the bar of the statute of limitations in an action for the recovery of real property, must show that he has held for the statutory period, not only by a possession actual, open and adverse, but that it

26   96
97   250

26   96
102  157

26   96
108  590

26   96
111  214

has been maintained as a right resulting from an exclusive property in and dominion over the estate, and not subordinate to the will of another, or by an agreement with the true owner of the title.

2. —— INTENT TO CLAIM TITLE : EVIDENCE OF. It is a material and essential requisite of adverse possession, that the occupancy has been with the intention to claim title ; and, as disproving this intent, it is competent to show, by the declarations of the occupant, that he did not hold adversely.

3. —— RULE APPLIED ; DISPUTED LINE : AGREEMENT : ESTOPPEL. Where the line between two adjacent owners was in dispute, and they entered into an agreement, that when a final decision was reached in a certain case then pending wherein the question as to the true location of the boundary line was involved, either party should place his fence upon the line which should be established by such decision, it was held, that the party continuing in possession of the tract between the disputed lines, was, in view of such agreement, estopped from claiming, that his possession, prior thereto, was adverse.

4. Estoppel : PREVENTION OF FRAUD. While an estoppel will be suppressed where fraud would be produced by its enforcement, it will, on the other hand, be called into being for the prevention of fraud.

5. Former adjudication : EFFECT UPON PRIVIES IN INTEREST. A prior adjudication settling disputed boundary lines to certain real estate, is binding not only upon the parties of record, but upon one who, as grantor of a portion of the land included between the disputed lines, is a privy in interest with the defendant, and who, in fact, conducts and manages the defense.

*Appeal from Delaware District Court.*

WEDNESDAY, DECEMBER 9.

ACTION OF RIGHT. — Plaintiff claims of defendants, the heirs and legal representatives of David Moreland, deceased, " a strip of land along the southerly side of the south half of the north half of section 4, 90, 3, and being about, etc.," counting upon a valid title, and claiming all except one-quarter of an acre near the S. W. corner of the N. E. ¼ of said section.

The answer denies title in plaintiff, setting up owner ship in defendants, and also quiet, uninterrupted, con tinuous and adverse possession in themselves and their ancestor, David Moreland, with color of title for ten years and more, next preceding the commencement of this action.

Trial, and verdict, generally, for defendants. The jury also answered certain specific interrogations, which will be found sufficiently referred to in the opinion. Motion for new trial overruled, and plaintiff appeals.

*B. W. Poor, George Watson* and *S. P. Adams* for the appellant.

(No brief found on file.)

*Shiras, Ballou & Van Duzee* and *T. S. Wilson* for the appellee.

I. An actual adverse possession is required under plea of the statute. To constitute an adverse possession there must be some claim or color of title under which the defendant has, in good faith, supposed he had a right to the property, and under which he continued in possession. *Jones* v. *Hockman*, 12 Iowa, 108.

An adverse holding is an actual, visible and exclusive appropriation of land, commenced and continued under a claim of right. Angel on Limitations, 473.

If a person enters upon land, and has his claim designated by lines marked upon the ground, and uses the woodland by cutting timber from it, the jury may presume an actual ouster of him who has the patent, and the settler may hold all within his lines under the statute of limitations. *Heiser* v. *Riehle*, 7 Watts, 35; *Criswell* v. *Altemus*, 7 Watts, 580.

McNamee v. Moreland.

If one enter upon land and procure the deputy surveyor to make a survey on the ground, without a warrant or other authority, such survey is competent evidence of the extent of the claim of the settler, and if he continue in possession for twenty-one years, the act of limitation will protect him in his title, to the extent of his claim, as designated by his survey." *Lawrence* v. *Hunter*, 9 Watts, 74.

It is settled beyond dispute, that an occupation up to a fence for the requisite time, gives a party an incontestible right to hold up to the fence, and equally whether the fence is on the right line or not. *Brown* v. *McKinney*, 9 Watts, 567.

A fence, building, or other improvement is not essential to constitute an adverse possession ; acts of ownership, under a claim of right, visible and notorious, are sufficient, and depend on the uses to which the land may be put. Adverse possession, with full knowledge of an older and valid title, is a bar under the statute. *Ewing* v. *Burnet*, 11 Peters, 41.

Ten years' adverse possession will settle division lines between adjacent owners. See *Burdick* v. *Heively*, 23 Iowa, 511.

2. The eighth error assigned can not be considered by this court, for the reason that the appellant did not include it in his motion for new trial before the court below.

3. Any stipulation made between Moreland and Page referred solely to the one-quarter acre tract in controversy in that action. By no possible rule of construction can the stipulation be construed to extend to other land in which Page has no interest whatever.

4. If the appellant relies upon the estoppel, he must show either a former adjudication (and if he relies on this as a plea in bar, it must be pleaded), rendered in an action between the same parties relative to the same subject

matter, and decided upon the same issue as the one presented in the present action. *Spooner* v. *Davis*, 7 Pick. 148; *Outram* v. *Morewood*, 3 East, 346; *Haight* v. *City of Koekuk*, 4 Iowa, 207.

Or else he must prove an estoppel *in pais*, and that is only allowed to prevent fraud and injustice, and has no application to the case before the court. *Lucas* v. *Hart*, 5 Iowa, 419; 1 Story's Equity, § 391.

Parol evidence is not admissible to show that some matter or point not embraced in the pleadings was in fact submitted. *Standish* v. *Parker*, 2 Pick. 22; *Smith* v. *Sherwood*, 4 Conn. 276.

5. Appellant endeavors to show that the verdict of the jury was erroneous, at least so far as the strip of land not inclosed within Moreland's fence is concerned, and to support this view quotes 2 Washburn on Real Property, and 2 Serg. & Rawle, which hold that possession acquired by a wrongful entry extends only so far as the tenant shall actually occupy. McNamee never at any time held the actual possession of any part of the strip of land in dispute in this case.

Moreland entered upon the land, claiming to the Bailey line, and has since 1842, or earlier, exercised acts of ownership over the whole of it up to that line. These acts were varied in their nature, but are fully sufficient to satisfy any one that he claimed the land to the Bailey line and used it according to the custom of the country up to that line. This evidence satisfied the jury, and they found that Moreland had occupied the whole premises by adverse possession for ten years and over. This settles the point.

The question raised by the defendant's plea of the statute of limitations was fairly and properly submitted to the jury, and they found thereon in favor of the defendant.

It was the province of the jury to decide this question, and the verdict will not be set aside, unless clearly and manifestly against the weight of evidence, and in this case the verdict accords with the weight of evidence. *Brockman* v. *Berryhill*, 16 Iowa, 183.

6. To constitute possession of land, there must be some unequivocal act of ownership upon it, which may be otherwise than by inclosing it with a fence.

The intention or animus of a party as connected with his action indicating ownership, is a question for the jury, and where it appears that such acts of ownership are in good faith, with the design to exclusively appropriate the land, a verdict will not be disturbed, especially when it is the fourth one on the same question. *Brooks* v. *Bruyn*, 24 Ill. 372.

Possession by defendant with a claim of title, for the statutory time, can no more be answered by averring that he knew he was wrong, than could the bar of two years, in slander, by the known falsehood of the libel. So long as a man is in possession of land, claiming title however wrongfully, and with whatever degree of knowledge that he has no right, so long the real owner is out of possession in a constructive as well as an actual sense. *Humbert* v. *Trinity Church*, 24 Wend. 586, which fully discusses the object and intent of the statute of limitations. 33 Penn. 331.

The doctrine of the courts, therefore, evidently is that where a grantee, in taking possession under his deed, goes unintentionally and by mistake beyond his proper boundaries, and enters upon and occupies and improves lands not included in the deed, claiming and supposing it to be his, this occupation is to be deemed adverse within the meaning of the statute of limitations, and if continued for the requisite time, will bar the right of the true owner. *Crary* v. *Goodman*, 22 N. Y. 174.

A constructive possession of the unimproved part of the lot, would remain in him who made the first entry under claim of title, and improved a part. *Jackson* v. *Vermilyea*, 6 Cowen, 680.

WRIGHT, J. — This case may be called, not inaptly, the sequel to *Moreland* v. *Page*, 2 Iowa, 139, decided in 1855. The parties own land, the plaintiff north and down to the center line, east and west, dividing sec. 4, T. 90, R. 3, the defendants south, and claiming to the same line as their northern boundary. And thus it will be seen, that as they claim to the same line, the one from the north and the other from the south, the point of controversy must be as to the true location of such line. In the previous case, Moreland, the ancestor of defendants, and plaintiff therein, insisted that his northern boundary was the line " A B," known as the " Bailey line," whereas Page insisted that the line " C D," known as the " James line," a line running south of line " A B," was the true boundary. It was there held that the line " C D " was the true one, and plaintiff, Moreland, as a consequence, failed in his action.

On the trial of this case in the court below, defendants were not allowed to controvert the validity of this prior adjudication. They relied upon their defense of adverse possession, running back to a period more than ten years before the commencement of this suit. Plaintiff, to defeat the bar thus set up, relied, for the most part, upon this prior adjudication, or we should perhaps say two prior adjudications. And whether defendants are estopped by such adjudications and proceedings is, in effect, the sole question involved in this record. There may be others, subordinate, but this is conceded to be the one upon which the case turns. In examining it we must first state some facts material to its disposition.

David Moreland, in the former case, by his petition, claimed the E. ½ of the S. W. ¼ and W. ½ of the S. E. ¼, sec. 4, T. 90, R. 3; that the northern boundary of said lands was the "Bailey line," "A B"; that Page was in possession of so much of said land as was between the lines "C D" and "A B"; that defendant claimed to be the owner, and that the line "C D" was the true line; that the claim was unfounded and that he was not the owner, and therefore, etc. The answer of Page denied that plaintiff was entitled to the land to the line "A B"; claimed that he was the owner of the strip, and that "C D" was the true line. At the October Term, 1853, the parties entered into a stipulation by which it was agreed that the question in dispute was the position of the east and west line dividing the north from the south half of section four; that if defendant should be found to be upon plaintiff's land, plaintiff was to have judgment for nominal damages and costs, and if not upon his land then judgment should go for defendant. In June, 1853, an agreement in writing was made as follows:

"DAVID MORELAND  
  *v.*  } Trespass.  
JEREMIAH PAGE.  

"PAGE, McNAMEE *et al.*  
  *v.*  } Application for road. Appeal from County  
MORELAND & MORELAND.  } Court.

"It is agreed by the parties to the above suits now pending in the District Court of Delaware county, that they shall be removed to Dubuque county for trial. \* \* And when a final hearing or decision is had, either party to place his fence, etc., upon the line which shall be established by such decision, and the road to be upon such ascertained line.

"In the mean time, until such decision, no further steps are to be taken to establish said road south of the line claimed by the Morelands, or within their inclosure."

The first agreement, above mentioned, was filed in the Dubuque District Court, after the causes had been removed thereto, in virtue of the second one; the said second agreement being signed by counsel for plaintiffs and defendants.

In April, 1856, the case of *Moreland* v. *Page* being in this court, upon appeal, final judgment was here entered, reversing the judgment of the court below, and further ordering that a line drawn, etc. (describing the "James line," or the line "C D"), should constitute the true line between the parties to this suit, and that appellant recover his costs, etc.

From this judgment Moreland appealed to the Supreme Court of the United States, and, in June, 1859, a mandate of said court, dismissing said appeal, was filed with the clerk of this court.

Plaintiffs offered all these records and proceedings in evidence for the purpose of showing that the "James line," so called, was the established line, dividing, etc., and that defendants were estopped from denying that this was the true line, to which defendants objected, and the papers were excluded, because the parties to that action were not the same-as in this, and plaintiff excepted.

Plaintiff then proposed to show, that, by the agreement and understanding between himself and David Moreland, in the suit prosecuted against Page, he (McNamee) became the real party defendant, instead of Page, his tenant, and did, in fact, defend said action; that Page was his tenant, and that it was so understood; that the question submitted in *that case* covered the whole subject in dispute in *this*, to wit, the location of said dividing line. To all this evidence defendant also objected, and it was excluded because it could only be shown by the record that McNamee was a party, and plaintiff again excepted.

The documentary evidence before rejected was after-

ward admitted, to show that Moreland did not have un-
disputed possession of this strip of land, and also to show
that there was controversy, but for no other purpose.

These defendants, and those under whom they claim,
have been in possession of the greater portion of this strip
since in 1852, and perhaps as early as 1850, and, indeed,
claiming to the "Bailey line" as early as 1842; said lines
being run at Moreland's instance in that year. Moreland
bought from the United States in 1839; McNamee bought
of the government after this, what date is not shown, but
his patent was obtained in 1846.

The witness, Page, testified, without objection, that he
bargained for a piece of land from plaintiff (being the ¼
acre excepted from plaintiff's present claim), upon which
he built a shop and cut a road; that Moreland brought
his action of trespass; that McNamee and another em-
ployed the attorney; that they paid all expenses after the
agreed case was made; that he had nothing to do with it
after this, they agreeing to save him from costs if he
would let them use his name.

It very conclusively appears, that, while Moreland
claimed to the "Bailey line," made and occupied his im-
provements north of the "James line," and claimed to
have title thereto for more than ten years, yet he based
his claim alone upon his title from the government, which
he insisted took him to the north, or "Bailey line." He
was aware that the line was in dispute when he built his
fence, and at no time was the correctness of his claim
conceded. He never pretended that he owned any land
in the north half of the section.

A great number of instructions were asked, some given,
others modified, and still others refused. The following
will serve to indicate the view of the law as entertained
by the court below:

Plaintiff asked this instruction: "If the jury believe

that the controversy in this case arose out of a dispute as to the line, and that defendants and their ancestor, under whom they claim, set up no title other than his patent, and only under it, if it covered the disputed strip, that would not constitute such an adverse holding as would entitle them to the benefits of the statute of limitations." To which the court added: "Provided, however, if defendants and their ancestor asserted their claim by the erection of a fence on what they claimed to be within or on the bounds of their land under their patent, and took and retained actual possession up to such fence, with the intention to claim up to the same, claiming a right so to do, and such adverse possession, with such intention, has been held by defendants or their ancestor for ten years, or longer, before the institution of this suit, then such adverse possession is a bar to plaintiff's recovery, as to any part of the land within the fence so erected."

This instruction asked by plaintiff was refused: "In order to entitle defendants to the benefit of the statute, they must show that they have been in peaceable and quiet possession, under color of title, for a period of ten years since the question as to where the dividing line is, separating the north half from the south half of section four, was determined by the Supreme Court in the case of *Moreland* v. *Page*." At defendant's instance, the jury were also told that "actual adverse possession for ten years under color of title, would bar the recovery; and further, that if defendants and their ancestor were in possession of the premises in dispute for ten years preceding the commencement of this suit, the same being held under color or claim of title and against all others, then their verdict should be for defendants."

The jury found specially that Moreland occupied the land north of the "James line," under no other claim than his patent for land in the south half of the section,

McNamee v. Moreland.

that he claimed no interest in the land conveyed by plaintiff's patent, but that he did claim to the "Bailey line," and that defendants and their father had held continuous adverse possession of the premises in dispute for more than ten years, etc.

Thus we have the body of the case extracted from a most voluminous mass of papers.  Other facts might be stated, bearing upon other questions made; but as they are immaterial to the points upon which the case must turn, they are omitted.

1. ADVERSE POSSESSION: statute of limitations.

Upon two grounds it seems to us that this judgment is erroneous.  The first is, that, in view of the agreements of the parties, defendants cannot date their adverse possession prior to 1853; and in the second place, we cannot resist the conviction, that the present plaintiff would have been concluded by the decision in the case of *Moreland* v. *Page*, if it had been adverse, and that he is, therefore, entitled to the benefit of it in the present action.

It may be conceded, that the doctrine of *Burdick* v. *Heivly* (23 Iowa, 511) is correct to the extent claimed by appellees, and still the first ground stated for the reversal would not be shaken, for this is not a case where defendant's built their fence by agreement with plaintiff, nor where the division line was agreed upon.  Nor was there, at any time, acquiescence on plaintiff's part, that defendant's should occupy to a given line.  Nor again will we stop to discuss the correctness of the rule stated in *Brown* v. *Cockerell* (33 Alabama, 45), to the effect that "if a party occupy up to a certain fence, because he believes it to be his line, but having no intention to claim up to the fence if it should be beyond the line, an indispensable element to adverse possession is wanting."

The argument in favor of the rule is, that "the intent to claim what is set up, is upon the condition that the fence is upon the line, or if the fence is put over the line

from mere convenience, the occupation and exercise of ownership are without claim of title, and the possession would not be adverse;" and in this connection compare with *Burdick* v. *Heivly* (*supra*) the case of *Howard* v. *Reedy* (29 Geo. 154); see also *Burnell* v. *Maloney* (39 Verm. 583), *Stevens* v. *Taft* (11 Gray, 35), *Burrell* v. *Burrell* (11 Mass. 294), *Holton* v. *Whitney* (30 Verm. 410), *St. Louis University* v. *McCune* (28 Mo. 481), *Brown* v. *King* (5 Metc. 173).

The doctrine asserted in the Alabama case is not in conflict with that, before cited, in this court. It is possible that it carries the rule too far, and indeed that it does not impair too much the force and effect of actual adverse possession, may be questioned. For every party who builds his fence, or otherwise takes adverse possession to a certain line, is supposed to do so with the belief that he has the right under his title, and with no intention to claim what is beyond the true line. And yet, however erroneous this rule, it would not disturb the proposition that if the possession was by agreement with the true owner of the title, or as the result of convention, it could in no sense be regarded or treated as hostile. Nor could the possession taken be adverse in its nature, nor of course in derogation of the rights of the true owner; and yet such it must be before defendants can rely upon it as conclusive evidence of an absolute title. For, in all these cases, the party relying upon the bar must hold, not only by a possession actual, open and adverse, but it must be maintained as a right resulting from an exclusive property in, and dominion over, the estate, and not subordinate to the will of another. 3 Wash. R. P. 483, marg.

The whole doctrine of adverse possession rests upon the presumed acquiescence of the owner (*Benje* v. *Creagh*, 21 Ala. 151), and no one would certainly claim, where the true owner was constantly asserting his rights and the

other party was holding by agreement with him, that there was such acquiescence or failure to assert a right as would defeat the true title.

Then, again, the law is stringent in requiring strict proof of the facts requisite to constitute adverse posses-

*2. —— intent to claim title: evdence of.*

sion. Among these is the material and essential one, that the occupancy must have been with the intention to claim title. In other words, the fact of possession and the *quo animo* it was commenced and continued, are the true and only tests (3 Wash. 489); and as showing this intent it is clearly competent to show by the declarations of the occupant, that he did not hold adversely. *St. Clare* v. *Shale*, 9 Bar. 252; 2 Smith's Lead. Cas. 566. So, if the entry is permissive, it of course should be shown, that the party did some act which would make his holdings adverse (*Hall* v. *Stevens*, 9 Metc. 418); and where the occupancy is the result of mutual consent it cannot well be hostile or adverse.

In *Burnell* v. *Maloney* (39 Verm. 583), where the line between two adjacent owners was in dispute, and they

*3. —— rule applied: disputed line: agreement: estoppel.*

agreed that the fence between them was not the true line, and that this should be ascertained, the occupancy in reference to such a fence was held not to be adverse on either side. That case differs from this, in the single thought, that the adjacent owners agreed that the fence was not the true line.

In this case, however, they did agree that when the final decision should be reached in the case then pending, "either party should place his fence upon the line which should be established by such decision." And, remembering that the statute protects the occupant, not for his merit, but for the demerit of his antagonist in delaying the contest beyond the period assigned for it, when papers may be lost, facts forgotten or witnesses dead (GIBSON, J.,

in *Sailor* v. *Hertzogg*, 2 Penn. St. 182), the question is most pertinent, how could there be demerit on plaintiff's part in not moving, or how could it be said that he delayed the contest, when the parties were engaged in its settlement in the proper tribunal and in the manner selected by the ancestor of these defendants himself, and accepted by the present plaintiff? The real owner yielded nothing. This holding was not without opposition. *Stevens* v. *Taft*, 11 Gray, 35. He could not very well do more than he did. Not only so, but it seems to us that

4. ESTOPPEL: prevention of fraud.  to allow defendants, in the face of the acts, conduct and agreements of their ancestor, to now insist upon this adverse possession, and avoid the force and legitimate effect of such acts upon the conduct of plaintiff, would give them the benefit of a fraud, actual or constructive. Certain it is that such conduct, if not fraudulent in its purpose, would, if plaintiff can now derive no benefit from it, be most unequal in its results; and as Moreland's course in the former case was intended to and did influence plaintiff's conduct (it certainly could have no other effect), and as plaintiff would be prejudiced unless defendants are cut off from the power of retraction, it follows, that they are estopped from claiming in this action that they held adversely to plaintiff prior to such acts, conduct and agreement: For in this we have the essence, the definition, of an estoppel. *Dalzell* v. *Odell*, 3 Hill, 219; *Lucas* v. *Hart*, 5 Iowa, 419; and see also *Stephens* v. *Baird*, 9 Cowen; 274; *Dewey* v. *Field*, 4 Metc. 384; *Shelton* v. *Alcox*, 11 Conn. 240.

While it is true that an estoppel should and will be suppressed where fraud would be produced, on the other hand, it will be called into being for the prevention of fraud. 2 Smith's Lead. Cases, 564. In our opinion, the case before us demands the application of the latter part of this proposition, and that the record offered in

McNamee v. Moreland.

evidence should have been received for something more than merely to show that Moreland's possession was not undisputed, but that there was controversy in relation to the same. It was competent to show that such possession was not adverse within the meaning of the law; that the parties made an agreement in relation to such possession, and that as this was made with the party shown to be the true owner of the title, the possession to the time of the determination of the action, could not be in derogation of such title.

In the second place, we think plaintiff is entitled to the benefit of the adjudication in the former case. This is conceded if he was a party or privy to the determination, and if that adjudication covered the matter now in controversy. As the record of the former trial was excluded, or its effect as an estoppel denied by the court below, because the parties were not the same, and as there is really nothing in the record to justify such refusal upon any other ground, we shall confine ourselves alone to this objection. It is true that Page only claimed to hold from McNamee a small part of the disputed strip. Moreland, however, claimed by his petition against him all the land up to the line "A B" or "Bailey line," and Page by his pleading claimed to the line "C D" or "James line." If there is any thing clear, plain and undisputed, this is. Between these two lines is the very land now claimed by plaintiff, and the former adjudication expressly holds that the "James or C D line" was the true one. So, too, it will be remembered, that, by the agreement of Moreland and Page, in October, 1853, it was expressly stipulated that the question in dispute was the position of the line dividing the north from the south half of the section; that if Page was found to be upon Moreland's land, there was to be judgment for nominal damages; if not, the judgment

<div style="margin-left:2em">5. FORMER ADJUDICATION: effect upon privies in interest: estoppel.</div>

was to go for defendant (Page). We are assuredly not mistaken, therefore, in saying, that if Page was a party to this case he could insist that his title could not be again drawn into controversy. The real question is, can the present plaintiff claim a like protection from this adjudication?

He was not a party to the record in the trespass case. (What disposition was made of the "Road case" does not appear, and we, therefore, except as noticed hereafter, make no further account of it.) Was he, however, in the trespass case, so far a stranger in person or estate, as that he was not bound by it, and hence not entitled to its benefits? In answering the inquiry, as we must very briefly, we remark, that nothing can be clearer than that by consent of the parties to the record, the object was to settle the title to this disputed strip; and while the question of title might or might not have arisen as the case stood at its commencement, the parties so framed their pleadings and their agreement, as to the real vital and conceded issue, as to convert it into an action to determine and have settled the title. This is shown by almost every line and sentence of the pleadings, by all the arguments, and by the judgment and opinion of this court. The controversy was one of a public nature somewhat, affecting not alone the parties to that controversy; and everywhere there is the most abundant evidence that it was a test case to determine where the true line was in this "lost survey." Now, under these circumstances, and upon the facts disclosed, is plaintiff entitled to the benefit of this adjudication? Page was either his tenant or grantee. Defendant insists he was the latter, while plaintiff, as will be seen in the statement of facts, proposed to show he was the former. Whether the one or the other, makes but little difference. For plaintiff's protection is put upon the ground, that he *was interested*

*in the defense of that action — was notified of its pen-dency, and did in fact and in reality conduct the defense, though in the name of Page.* This, if true, would con-clude him, so that he could not have disputed Moreland's title if the line " A B " had been recognized as the true one. And as he would have been concluded, we hardly need say that he can claim the benefit of the determina-tion that the line " C D " was that which divided their lands. These propositions are well sustained. In their support we content ourselves with citing the following authorities: *Chirac* v. *Reinecker,* 2 Pet. 617; *Chambers* v. *Safely,* 7 Barb. 24; *Collingwood* v. *Irwin,* 3 Watts, 311; *Hamilton* v. *Cutts,* 4 Mass. 349; *Kelly* v. *The Church,* 2 Hill, 115; Rawle. on Cov. 109; *Duffield* v. *Scott,* 3 Tenn. 374; *Kip* v. *Brigham,* 6 Johns. 158; *Blasdale* v. *Bab-cock,* 1 id. 517; *Bender* v. *Fromberger,* 4 Dall. 436; Rev. §§ 3582, 89; Code of 1851, §§ 2012, 18; *Brown* v. *Sprague,* 5 Denio, 545; *Dunckle* v. *Wiles,* id. 296.

We need hardly say that the existence of the estoppel is always a question of law for the courts. If the facts were as above suggested, then the jury should have been told that defendants were estopped by the former adjudi-cation, and that their claim of adverse possession could not date back of that time.

It is suggested, in argument, that the estoppel should have been replied specially to the plea of the statute, or at all events, defendants should in some way have had notice by the pleadings that plaintiff intended to rely upon this judgment. A sufficient answer is, that our statute expressly prohibits a replication, except in cases of set-off, counter-claim or cross-demand. Then again, under no system of pleading in an action of ejectment was it necessary to plead the estoppel, and especially so, when, as under our statute, there is no opportunity to plead it. See, on this subject, *Sprague* v. *Waite,* 19 Pick.

455; *Wann* v. *McNulty*, 2 Gilm. 355; *Adams* v. *Barnes*, 17 Mass. 370.

Reversed.