B. I. SALINGER, ET AL., Appellants, v. LUCIUS McALLISTER, ET AL., Appellees.

**Mortgages:** ABSOLUTE DEED: PAROL EVIDENCE: PLEADINGS. Parol evidence is not admissible to establish a trust, mortgage or power in relation to real estate, but it is competent to show by parol that a deed absolute on its face was intended as a mortgage. In this action for an accounting and to redeem from an absolute deed the petition alleged a conveyance by a partnership to secure a debt, and although pleading a reconveyance to one of the partners, it alleged continued possession of the grantee under the original deed for the purpose of realizing the amount of the debt, and that the partner to whom reconveyed made no conveyance, but that the original grantee conveyed to another. *Held,* on demurrer not to show that plaintiff's rights rested entirely in parol, but rather that the reconveyance never became effective, and as the original grantee and those claiming under him rested upon the original deed, they were bound by the terms and conditions upon which it was accepted.

**Same.** The petition also alleged that the original grantee went into possession under an oral agreement to apply the income from the land to the satisfaction of the partnership debt. It also pleaded a subsequent written agreement between the surviving partner and the grantee, reciting the giving of certain notes by the surviving partner in full settlement, discharge and release of all partnership

matters; the giving of collateral security for the notes; that the same were given in renewal of the balance due from the partnership; and that the grantee thereafter claimed the land as security for the notes; but this agreement did not expressly release any security or show whether the land was considered in the settlement, or that there was any question concerning an accounting for the income therefrom. *Held*, that those matters wherein the contract was incomplete or ambiguous were susceptible of explanation, and that it could not be said as a matter of law that the petition did not show a novation of the previous partnership indebtedness, satisfaction and adjustment of all matters between the parties.

Same: ACCOUNTING: LIMITATION OF ACTIONS. If any statute of limitations is applicable to an action for an accounting by a mortgagee in possession it is the ten year statute, which applies to written contracts; but so long as any part of the debt secured remains unpaid and enforceable the statute does not run against such an action.

Mortgages: POSSESSION BY MORTGAGEE: ADVERSE POSSESSION. Where the grantee in a deed given as security for a debt was in possession by consent, and the grantor had no knowledge of a subsequent conveyance by the grantee until it was recorded, after which the title was in dispute until the commencement of an action to redeem, the doctrine of adverse possession has no application.

Equity: LACHES: HOW DETERMINED. The question of laches is one of mixed law and fact, which cannot be determined upon demurrer, unless reasonably apparent that the delay was without excuse and in some manner prejudicial.

*Appeal from Osceola District Court.*—HON. WM. HUTCHINSON, Judge.

TUESDAY, MARCH 24, 1914.

SUIT in equity by plaintiff, in his individual capacity and as surviving member of a partnership known as Salinger & Brigham, to have an absolute deed to the defendants, or to some of them, or to their ancestors, conveying certain lands in Osceola county, decreed to be a mortgage, for an accounting of the rents and profits, for a decree authorizing and permitting redemption, and for other equitable relief. Defendants' demurrer to the pleading as amended was sustained, and thereafter plaintiffs filed a further amendment

to the petition, which was stricken on motion, and, plaintiff refusing to plead further, his petition was dismissed at his costs, and he appeals. *Reversed.*

*B. I. Salinger,* and *O. J. Clark,* for appellants.

*Jayne & Hoffman,* and *B. F. Butler,* for appellees.

DEDMER, J. It is with great difficulty that we have been able to find out just what the facts are as pleaded by plaintiff to which the demurrer and motions were sustained. There was a petition, an amendment to the petition, second, third, fourth, and fifth amendments to the petition, all of which were very long, and the abstract and amendments thereto contain nearly 45 pages of printed matter, which it is claimed constitute a record of the various pleadings, motions, and demurrers filed, withdrawals of pleadings, decrees, etc., and, if we make any mistakes of fact, it is due wholly to the fault of counsel, who should have agreed upon the record, as it involves nothing but the sufficiency of the pleadings attacked by motion and demurrer.

The questions in the case are the sufficiency of the pleadings attacked as a matter of law, and all matters of fact properly pleaded by plaintiff, as distinguished from conclusions of law or inferences not warranted by conceded facts, must be taken as true. The demurrer cannot be treated as a ''speaking'' one, and we cannot, therefore, consider any fact not alleged by the plaintiff. In other words, defendant's demurrer and motion cannot be aided by anything outside the record, although it be based upon matters which might properly be pleaded in defense, even though these facts be true, and shown by some other record aside from what is now before us. We have had to resort to the transcript, and, at the risk of being tedious, we have extracted therefrom the following facts, gathered from the various pleadings attacked:

Plaintiff Salinger and one L. P. Brigham, now deceased, were at one time partners, doing business under the firm name of Salinger & Brigham. Brigham, on his private account, became the agent of one H. C. McAllister, for the loaning of money, and as such agent became largely indebted to his principal. Brigham induced his partner, Salinger, to permit the use of the firm name in making obligations for these debts, and furnishing security therefor, and as a result many notes were executed in the firm name to McAllister, some in renewal of previous obligations, and some original in form. The total amount of the indebtedness ran from something like $8,600 on January 1, 1887, to something over $15,000 on March 1, 1889.

The partnership at one time owned the land in controversy, although the title stood in the name of Brigham, and on September 2d, of the year 1889, Brigham made a conveyance of the property to McAllister; the conveyance was in form a deed, but it was in fact intended as security for the indebtedness of Salinger & Brigham, the agreement being that there should be a reconveyance whenever the indebtedness was discharged, or sooner, if the partnership had an opportunity of selling the land, and in the event of such sale the indebtedness to McAllister should first be paid, and the remainder, if any, should be kept by the firm. The partnership retained the actual possession of the land, and on October 1, 1891, McAllister reconveyed the land to Brigham.

On November 16, 1891, an agreement was made between McAllister and the firm whereby the firm gave McAllister three notes for $2,400 each, due November 16, 1895, 1896, and 1897, respectively. The writing then executed reads as follows:

On this day Benj. I. Salinger and L. P. Brigham have made their three notes for $2,400 each drawing 8%, due November 16, 1895, 6 and 7 respectively, no interest payable until January 1, 1892, annually thereafter to H. C. McAllis-

ter.   These notes are given in full of account of all former
notes given, and of all matters growing out of the loaning
and handling of McAllister's money by said other parties.
The said Salinger deposits certain collateral to the said three
notes, and when the same are paid, the title to certain col-
lateral shall revert to said Salinger.   All collaterals hereto-
fore deposited with said McAllister, or held for him by said
Salinger & Brigham, are now the property of said last-named
parties and this includes all choses in action and suits pend-
ing now standing in the name of or enforceable by said
McAllister.   All the personal property now situated on the
farm adjoining the town of Harris, in Osceola county, Iowa,
is now the property of Salinger & Brigham, except that out
of the proceeds of same McAllister is to be paid $1,000.00,
to be applied as a payment on said three notes.

Shortly after the making of this agreement, McAllister
took possession of the land which had been deeded to him,
with consent of the partnership, under a verbal agree-
ment that he should hold possession and operate it
for and on account of the partnership, and continue
to use and operate it until the indebtedness of the firm was
satisfied.   He did in fact have possession under this agree-
ment until July 11, 1893, or March 7, 1896; the exact date
being a little obscure.   In the meantime, and early in the
year 1892, Brigham died, and Salinger became the sole surviv-
ing partner.   In the year 1893 Salinger, as surviving member
of the partnership, and on his individual account, had some
negotiations with McAllister, resulting in the execution of a
written agreement of date July 11th of that year, reading
as follows:

Muscatine, Iowa, July 11, 1893.   On this day B. I. Salin-
ger gives H. C. McAllister his note for $300 due in one year,
and his seven notes for $500, each due in 2, 3, 4, 5, 6, 7, and
8 years respectively.   These notes are in satisfaction of all
due McAllister from the late firm of Salinger & Brigham and
they operate as a full mutual discharge and release of all
matters and dealings between said parties.   For collateral to
secure said notes, B. I. Salinger shall deposit with H. C.

McAllister a policy of insurance on Salinger's life in the sum of $4,000, which policy shall be returned to said Salinger at Seattle, Wash., where he intends removing as soon as the debt secured by it is paid. [Signed in duplicate] B. I. Salinger. H. C. McAllister.

Plaintiff alleged that:

These notes were given and received in lieu of all other evidences of debt heretofore executed to McAllister by said partnership; that they were given by Salinger as surviving partner as a renewal, extension, and continuation of what was then due on notes which had been signed by the partnership; that as much as the sum of three notes was outstanding at the time of Brigham's death on notes signed by the partnership; that in such settlement there was merged whatever indebtedness to McAllister had theretofore been existing in any form; and that said notes, given in pursuance of such settlement, evidenced the debt secured by the mortgage now in controversy. In the year 1894, McAllister stated to various persons that he was owner of said notes given on July 11, 1893, and that said notes were secured by the land in suit here.

On March 6, 1896, a suit was brought against McAllister and others by one Culbertson, in which it was claimed that the land in suit belonged in fact to Salinger & Brigham, and on the 7th of that month McAllister made a deed to his son Lucius for an expressed consideration of $13,000. This deed was not recorded until June 30, 1899. It is alleged that this deed was without consideration, fraudulent, and void, because made with intent to defraud, not only the creditors of Brigham, but also those of McAllister, the grantor, and that the grantee had knowledge of the fraud; and that the transfer was in violation of the trust.

It is also alleged that, at the time of the making of this conveyance, H. C. McAllister was mentally incompetent and lacking in capacity to make a deed. H. C. McAllister died in March of the year 1898, and one Burnett was appointed

administrator with will annexed of his estate; his wife being the sole beneficiary under the will. Thereafter Mrs. McAllister died, and Lucius, who was appointed the administrator of his mother's estate, brought suit on the notes made by Salinger, pursuant to the agreement of July 11, 1893, and Burnett, as administrator, was made a party to this action, which was not terminated until January 30, 1911.

It is further alleged:

That, when said Lucius McAllister took said deed, the said H. C. McAllister was mentally incapable to execute same. That the same Lucius then knew this, or could have ascertained it, and that he induced the making said deed while sustaining confidential relations with said H. C. McAllister. That when said Lucius took said deed he knew, or had good reason to believe, that his said grantor had no lawful right to make deed, and that it was being made for an improper and unlawful purpose. That said deed to Lucius was wholly without consideration, and made for the purpose of wrongfully depriving said partnership and said Salinger of said land, and was made for the purpose of cheating the creditors of said Brigham, or of H. C. McAllister, and to hinder and delay any such creditors in the collection of their claims. That said deed, and the quitclaim deeds hereinafter referred to, were made as a part of a plan to pass said land to the heirs of H. C. McAllister, free from the just claims of said partnership, and of said Salinger, and free of any other just claims that might exist against either said Brigham or said H. C. McAllister, and that, when said deed was taken, the said Lucius either well knew all this or had such information and notice as, reasonably pursued, would have advised him of it. That thereafter the said Lucius McAllister pretended to make quitclaim deeds for the said Osceola county lands to defendants Celia Brigham and Anna M. Burnett, and that said defendants Brigham and Burnett have no right in said lands other than such as may have been granted to them by said pretended quitclaim deeds. That said deeds were made and taken without consideration, and that grantees well knew the rights of this plaintiff and said partnership in said lands when they took said deeds, or had notice of such facts as did and should have advised them of such rights.

And that said quitclaim deeds were given and taken as is charged in paragraph 5 of the original petition and in paragraph 8 of the second amendment to petition. That H. C. McAllister has died before the bringing of this suit, and by will devised to Martha A. McAllister, his wife, all his property. That the defendant Lucius McAllister is the administrator of the estate of the said Martha A. McAllister. That the defendant L. G. Burnett is the administrator with the will annexed of H. C. McAllister. That Lucius McAllister, Celia Brigham, and Anna M. Burnett are the children and sole surviving heirs of H. C. McAllister and Martha A. McAllister. That Celia Brigham is the widow of the said L. P. Brigham, and the defendants Helen Brigham and Mrs. Harry Hine are the sole surviving children and heirs of the said L. P. Brigham. That the defendants Celia Brigham, Helen Brigham, and Mrs. Harry Hine, claim that said L. P. Brigham had no interest in said lands at the time of his decease, and have procured a court of competent jurisdiction to so decree in a suit, in which they were parties. That therefore they are not joined as plaintiffs in this suit, but are made defendants. That there is due on said mortgage agreement the full sum if said notes, signed by B. I. Salinger, minus a payment of $50. That the undivided one-half interest in said lands owned by the said Brigham at the time of his decease, and now owned by his heirs, is amply sufficient to satisfy and pay the whole of the said amount due.

Further it is alleged that:

In August, 1899, Lucius made a pretended deed to one Dougherty, purporting to sell the land for $12,000, or $1,000 less than the price which the deed to Lucius recites he paid to H. C. McAllister more than three years earlier. When the deed to Dougherty was made, Lucius and he entered into a secret contract, under which Dougherty gave his note for said $12,000, with condition that Dougherty should reconvey on demand on the return of his said note. A reconveyance was effected after the death of Dougherty by means of a friendly suit in probate. Then follow allegations that a suit was begun by Culbertson in March, 1896, and certain things were done therein up to January 17, 1905. That to this suit Lucius, representing H. C. McAllister, became a party on December 9, 1897, and in which he, as administrator, was

substituted in October 1900, and in which L. G. Burnett, as administrator, was substituted for H. C. McAllister December 6, 1900. That this advised all the world from March, 1896, to January 17, 1905, that claim was made that Salinger & Brigham owned this land. Other allegations charge that like notice was given by certain probate proceedings instituted in January, 1897, and by a suit begun by one Coburn on November 9, 1906, and not terminated until October 1, 1909. It is alleged that at the death of McAllister in 1898 all of the mortgage debt was not due. That up to the middle of the year 1909, at least, owing to said litigation the title to this land was in such condition that no money could be borrowed on it by said partnership, or either of its members. That neither of the firm or its members had means of credit wherewith to make redemption. That the first time either means or credit enabled them or either to make redemption was about the middle of the year 1909, and this suit was begun in June of that year.

After a ruling sustaining defendants' demurrer to the petition pleading the facts above recited, plaintiff filed an amendment to the petition, in which he made the following additional allegations:

McAllister died in March, 1898, at which time three of the notes given on July 11, 1893, and aggregating $1,500, had not yet become due; that the representatives of H. C. McAllister brought suit on all notes given on July 11, 1893, before the statute of limitations had barred any; that the bringing of the suit stopped the running of the statute, and that such suit was not terminated until January 13, 1911; that a deed made by H. C. McAllister to his son Lucius was volunteer and fraudulent and made to defeat the claims of plaintiff and his partnership and other creditors, and that said deed was kept for years from the record; that when it was put on record, a pretended deed was made by Lucius to one Dougherty, with the secret agreement to take a note for the price, which was less than the one pretended to have been paid by Lucius, and that reconveyance should be made on the surrender of the note, and that such reconveyance was finally effected; that later pretended quitclaim deeds were made by Lucius to his two sisters and codefendants, which were volunteer and fraud-

ulent; that all grantees in said deeds had full notice of the rights of plaintiff and his partnership; that neither the partnership nor its members had any knowledge or notice of any of said deeds until February, 1907, and never consented to the making of same, or any of them; that various items of litigation brought in the courts, to some of which the defendants were parties, kept them and the world constantly advised of the claim that said partnership owned the land; that from March 6, 1896, up to October, 1909, the title was so constantly kept in such condition that neither the partnership nor its members could borrow money on the land; that during all this period, up to about the middle of the year 1907, neither said partnership nor any of its members had means or credit wherewith to effect redemption of the McAllister mortgage, and that, at the time of McAllister's death in 1898, $1,500 worth of the notes secured by the mortgage were not yet due; that this suit to redeem was brought as soon as the mortgagor had any means of credit wherewith to effect redemption, which did not come to pass until about the middle of the year 1909, and that this suit was brought on June 27, 1909. The partnership has outstanding debts to which the half interest once owned by Brigham, and now owned by his heirs, is subject, and said half interest is amply sufficient to pay said debts, and all that may be found due H. C. McAllister. The only interest defendants have in the land is to hold half of it as security for whatever may, on accounting, be found due H. C. McAllister from Brigham, with interest. Plaintiff prays as an individual that he be decreed to own an undivided half interest in said land, free and clear of all liens on the part of H. C. McAllister, or any one claiming under him. Plaintiff prays that in his representative capacity, and on behalf of said partnership, he be decreed to be the owner of the undivided half once owned by Brigham, and now owned by his heirs, and that such undivided half be subject to the payment of the liability to H. C. McAllister.

The defendants' demurrer to the petition before the introduction of this last amendment to the petition was on the following grounds:

The facts stated in petition and amendments thereto do not entitle plaintiff to the relief demanded. The petition as

amended shows on its face that plaintiff's action is barred by the statutes of this state for being brought more than five years after the cause of action therein set out accrued. The petition as amended shows on its face that plaintiff's cause of action is barred by the statute of limitations because more than ten years have elapsed after plaintiff's cause of action accrued, and the bringing of the suit. It appears from the petition as amended that the deed to the land, which it is alleged was given as security for the debt due from Brigham & Salinger to H. C. McAllister, and the debt itself, were made prior to November, 1891; that the possession of the land was turned to H. C. McAllister in November, 1891; that the partnership terminated the trust and conveyed the land to Lucius on March 7, 1896; that defendants, and those under whom they claim, have been in uninterrupted and undisturbed possession since 1891; that no effort was made by plaintiff for himself, or his firm, to assert any right to said real estate or any claim thereto until this suit was instituted on June 26, 1909; and that plaintiff by his delay and laches, as well as the statute of limitations, is barred and estopped from asserting or claiming any right, title, or interest in and to this land, or from maintaining this suit.

The motion to strike the amendment filed after the ruling on the demurrer was bottomed upon the thought that nothing new or material was added to the original petition, with all its amendments prior to this last one. Unless we have overlooked something in our effort to untangle these various pleadings, with their amendments, striking out various allegations and substituting others, the foregoing are the material allegations which were admitted by the demurrer, and the motion and the questions presented involve the correctness of the rulings on the demurrer and motion.

I. Some of the points made by appellee in support of the ruling of the trial court are obviated by the fact that the matters relied upon were expressly excluded from the record by amendments withdrawing the allegations, or striking the same, and substituting others, and in various ways eliminating them from the case.

The main points now ruled upon are: (1) That plaintiff is relying upon a parol trust creating an interest in or lien upon land, which cannot be done because of our statute providing that all declarations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance. Code, section 2,918. (2) That all indebtedness of Salinger & Brigham to H. C. McAllister, and all their obligations, and all indebtedness of H. C. McAllister, or obligation on his part to the said firm, were satisfied, cancelled, and discharged by the agreement of July 11, 1893, and constituted a payment and discharge of all debts of Salinger & Brigham to McAllister, and a release and discharge of any interest in the land deeded to McAllister. (3) That plaintiff's action is barred by the statute of limitations; both the five and the ten year statute. (4) Plaintiff is barred and estopped from asserting his claim by reason of laches. His claim is stale, and equity should not give him relief.

II. As to the first proposition, it is true that plaintiff alleged a reconveyance of the land by McAllister to Brigham, the purpose of which is not disclosed, save that by agreement McAllister was to reconvey to Brigham if he had an opportunity to sell, in which event sufficient of the proceeds were to be turned over to McAllister to satisfy his claim. It is also alleged that the debt was in fact never paid, but that McAllister kept possession of the land under his original deed, under an agreement that he would try to realize the amount of the Salinger & Brigham debt. It is further shown that Brigham made no conveyance during his lifetime, but that McAllister kept possession of the land, and finally sold it to his son Lucius, when claim was being made that the land belonged to Salinger & Brigham, or to Brigham, with intent to defraud, etc.

1. MORTGAGES: absolute deed: parol evidence: pleadings.

From these allegations it appears that McAllister's title was at all times based upon the original deed, made to him by Brigham, and that the title as now claimed by defend-

ants is based upon this deed and not upon any conveyance by L. P. Brigham after the reconveyance to him. Of course a trust or mortgage, or power cannot be established by parol; but it is equally true that an absolute deed may be shown by parol to have been intended as a mortgage. Such testimony is not excluded by the statute of frauds or by the special statute to which reference is made. If plaintiff were relying solely upon a parol agreement to the effect that McAllister should take the land as security for a debt, there being no written testimony upon which to predicate such a claim, defendants' proposition would be good. Here there was a written deed upon which the defendants' title is based, which it is claimed was given as security for an indebtedness of the firm of Salinger & Brigham; and, while a reconveyance to Brigham is alleged, such facts are pleaded as tend to show that this deed never became effective or operative because of the fact that defendant McAllister thereafter treated the lands as conveyed to him by the original deed from Brigham, and conveyed the land to his son, who in turn conveyed to others, and, even if there had been no intermediate agreement between McAllister and the firm, the testimony as to the giving of the original deed as security for a loan which was never extinguished was admissible, and, so long as McAllister or his representatives, heirs, devisees, or grantees claim under that deed, they are bound to all the conditions whereby it was secured.

Why the allegation as to the reconveyance to Brigham was inserted we are at a loss to know, but, whatever the purpose, there is not enough in the record to defeat the plaintiff's claim that the title in the defendants rests upon a deed, which, though absolute in form, was intended as security for a debt. It may be, of course, that the proofs when the case goes to trial, if it ever does, will so change the situation that plaintiff must be defeated because of this reconveyance, and the further fact that all his claim of title to or interest in the property, and his right to redeem, rests simply

upon parol testimony which, in the absence of some writing, will be inadmissible. We are now passing upon a case made by plaintiff upon paper; the demurrer admitting all the facts properly pleaded. It does not now sufficiently appear that plaintiff must be defeated because of the allegation of a reconveyance to Brigham.

III. The agreement of July 11, 1893, is relied upon as a novation of the previous indebtedness of Salinger & Brigham and as a full release and satisfaction of all the indebtedness of Salinger & Brigham and a full adjustment of all matters between the parties. That it might have been so given is clear, and there is much to indicate that this may have been true; but in face of the allegations of the petition, which are admitted, that it was given by a surviving member of the firm of Salinger & Brigham in renewal of, and as an extension of, the previous indebtedness of the firm, and the agreement does not specifically refer to the deed which it is claimed was given as security for the original indebtedness, we do not think it can be held as a matter of law that this written agreement fully satisfied all claims theretofore held by either of the parties against the other, or that it in effect made the deed, theretofore held as a mortgage, absolute. Moreover, if under the allegations of the petition the Salinger & Brigham debt was satisfied, canceled, and released, they (Salinger & Brigham) would, in the absence of a specific agreement to the contrary, be entitled to a return of all the securities which were theretofore held as security for the debt.

2. SAME.

In order to strengthen the plaintiff's claim, he pleads that, after the making of the contract, McAllister was claiming that he held the land as security for the notes that day executed by him to McAllister. There is nothing in the agreement itself which would have prevented McAllister from claiming that he still held title to the land as security for the agreed indebtedness. At this time the agreed indebtedness amounted to $3,350 (or $3,500), and whether or not the land was taken

into account in arriving at this amount does not appear from the record now before us. Here again plaintiff may have some difficulty with his proofs which will not be so easily overcome, as when stating a case on paper. On the face of the instrument, it would look as if the original indebtedness were merged into the new notes, and that all prior matters were settled and adjusted. But plaintiff pleads and defendant admits that these new notes were simply executed as a renewal of the prior indebtedness, and that the prior indebtedness was not canceled. If that be true, then McAllister was entitled to hold the land as security for the renewed debt, unless it appears that he voluntarily waived it, or that the land itself, or its value, was taken into account in the settlement, as may have been the case. If that be true, then of course this would end the case.

The trouble here is that, while the agreement of July 11th is quite specific, it does not in terms release any securities which McAllister may have had for the debt which it is said was renewed, nor does it indicate that the land was taken into account in fixing the amount of the indebtedness. In its final analysis, the question here is: Would parol evidence be admissible were McAllister seeking to use the land as security for the indebtedness represented by the Salinger notes, or attempting to foreclose the grantor's right of redemption? If McAllister would have had the right, under the allegations of the pleading, to prove by parol that, notwithstanding the agreement, he still held the land as security for the indebtedness represented by the renewal notes, that day executed, Salinger has the same right, save that he perhaps might stand in the position of having paid the original debt, and, as surviving partner of his firm, be entitled to a return of the land which had been conveyed as security for the indebtedness, unless, of course, the land was taken into account at the time the settlement was made. Down to that time there does not appear from the pleadings to be any question about McAllister's having accounted for all the

rents and profits of the land, and, if he did this at the time
of the settlement, he might still be entitled to all the secur-
ities that had been given him to secure the original indebted-
ness which was renewed on the 11th of July.

Here a question of fact may arise upon the trial, which it
will be difficult for plaintiff to establish. With that question
we have no present concern. We must accept the facts as stated,
and, unless it be apparent that parol testimony would not be
admitted under any circumstances to prove the facts alleged,
we must accept the statement in the pleadings as being true.
If the paper writing be incomplete, or ambiguous, and if it
does not in fact amount to a release and satisfaction of the
security given by the deed, then parol testimony as to the
transaction, from competent witnesses, may be received to
show the exact nature and character of the settlement.     If
from this it should appear that the land was considered in
the settlement and that from that time on McAllister held
the absolute title in virtue of the settlement, this will be an
end of the case.

IV. Assuming that this is an action for an accounting
by a mortgagee or grantee in possession, under a deed
intended as security, neither the five nor the ten year statute
of limitations, upon which defendants rely,
3. SAME: account-  is applicable.    If there be any statute
ing: limita-
tion of actions.    applicable, it is the ten-year one, applicable
to recovery on written contracts.    So long as any part of
the debt for which the security was given remains unpaid
and enforceable, the statute of limitations does not run
against an action for an accounting and to redeem.  *Adams
v. Holden,* 111 Iowa, 54; *Dunton v. McCook,* 93 Iowa, 258.

This action was commenced in June of the year 1909, and
part of the notes secured by the deed did not mature until
July of the years 1899 and 1900, respectively.    Moreover,
it seems that action was brought on all the notes in August
of the year 1900, which was not terminated until in August
of the year 1911.    Defendants say that in this action recov-

ery on the notes was defeated; but such fact, if true, does not appear in the record now before us.

It appears that defendant H. C. McAllister was in possession of the land by consent from November, 1891, until March, 1896, and that the conveyance made by him to his son was not recorded until June 30, 1899, and that plaintiff had no knowledge of the deed until after it was recorded. It also appears that the title has been in dispute ever since that date, so that there is no merit in the claim of adverse possession. *McNamee v. Moreland,* 26 Iowa, 96; *Boynton v. Salinger,* 147 Iowa, 537; *Smith v. Young,* 89 Iowa, 338.

4. MORTGAGES: possession by mortgagee: adverse possession.

V. As to plaintiff's laches. This is a mixed question of law and fact, and not as a rule determinable upon demurrer, unless it be reasonably apparent that the delay was without any excuse, and that it was in some way prejudicial to defendants. *Gay v. Havermale,* 27 Wash. 390 (67 Pac. 804); *Beekman v. Hudson River R. R. Co.* (C. C.) 35 Fed. 33; *Bulkley v. Bulkley,* 2 Day (Conn.) 363. These facts do not sufficiently appear here; what the testimony may show, we have no occasion to determine.

5. EQUITY: laches: how determined.

Because of the prolixity of the pleadings and the trouble in ascertaining just what are the facts, we have had more than ordinary difficulty in disposing of the case. We reach the conclusion upon the whole record that the last motion, which was in effect treated as a demurrer, should not have been sustained, and that the plaintiff made out a case on paper, calling for equitable relief.

The judgment must therefore be, and it is—*Reversed.* All the Justices concur.