LAFAYETTE L. DAVIS v. THOMAS JUDGE.

*Ejectment.   Evidence.   Division Line.   Delaration.   Pleadings.*

Where the question was as to the location of a division line, it was competent for the plaintiff to show where a former owner of the land of the defendant, through whom the defendant claimed title, claimed the line to be, and for this purpose copies of certain deeds which tended to show, in connection with other evidence, where former owners claimed the line to be, were admissible in evidence for the purpose claimed and under the circumstances detailed in the case ; and it was not essential that there should be evidence that the defendant or his immediate grantors ever recognized or had notice of the particular division line made by such former owner.

In an action of ejectment the premises should be so described in the declaration that the defendant may be able to ascertain for what he is sued, and that the record of the recovery may enable the plaintiff to point out to the sheriff who serves the writ of possession, the land recovered, and that the record may furnish evidence of the limits to which the title is established by the judgment.

Where the location of the division line between the land of the plaintiff and that of the defendant is the very question in dispute, and the declaration described the plaintiff's land as being bounded on one side by the defendant's land, it was *held* insufficient upon motion in arrest of judgment.   And the defect was not cured by a special finding of the jury that a certain line on the plaintiff's plan, which was put into the case, was the true one.

THIS was an action of ejectment. Plea, the general issue, and trial by jury, September term, 1871, Ross, J., presiding.

The plaintiff, to maintain his claim of title, gave in evidence various deeds and office copies. The plaintiff's claim was, and his evidence tended to show, that there was a small piece or strip about 21 feet long, adjoining the defendant's land on the south, upon which the defendant had erected a barn, the northern foundation wall being over upon the plaintiff's land 7½ inches at the northeast corner, and 10½ inches at the northwest corner ; and that the water falling from the eaves of this barn would drop upon him 14 inches over the line at one end, and 17 inches at the other. The defendant claimed, and his evidence tended to show, that this barn was erected in 1869, on the same foundation on which an old shed had stood for a time beyond the memory of man ; that said foundation wall of the barn was on a line with a part of the same shed, now standing easterly and adjoining the barn.

No witness on either side professed to have any knowledge where the original line between the premises now owned by the parties was located.

The plaintiff offered a plan, marked " K," of the premises, and showed its correctness by the surveyors who made it. The " blue line " on this plan indicates the plaintiff's claim.

Defendant also offered the plan marked " L," and proved its correctness, as claimed by the defendant, by the same surveyor. It appeared that this plan was made before the erection of the " barn," and while the " old shed " was standing. The " red line " on each plan represented the line as defendant claims it.

A certain post standing in the front yard fence, between the plaintiff and defendant, was agreed by both parties to be on the true possessory line between them. A most material question in the case was the point to which this line should be extended. The plaintiff claimed that this line extended westerly, as indicated by the " blue line " on plan " K," past the land in controversy, between the premises of one George Fisher, and another tract of land now owned by the defendant, but not comprised in his purchase from Hall and wife of February 22, 1854, but being a portion of the original Hotchkiss property, on which a tenement

house now stands, and which the evidence tended to show was erected by Elijah B. Wales, about the year 1850, to a point beyond the premises of either plaintiff or defendant, to the northeast corner of land conveyed to John B. Simonds by Elijah B. Wales, August 6, 1850, this also being a part of the original Hotchkiss property. The plaintiff claimed that this northeast corner was on the original line between the Hotchkiss land and the Ball land, Ball being one of the plaintiff's grantors, and Hotchkiss one of the defendant's grantors.

The plaintiff offered in evidence office copies of two deeds, both dated August 6, 1850, one from Elijah B. Wales to Geo. W. Esterbrooks, marked " M," the other from said Wales to John B. Simonds, marked " N." The defendant objected to the admission of both said office copies, as irrelevant to any issue in the case, and as having no tendency to show where either the original line or the possessory line between the plaintiff and defendant was. The court overruled the objection, and permitted said copies to be read to the jury, to which the defendant excepted.

Before said office copies " M " and " N " were admitted, the plaintiff gave evidence, without objection, tending to show that Elijah B. Wales, after May 11, 1848, and before August 6, 1850, became the owner of a portion of the original Hotchkiss property by purchase from A. Stone, who then owned the defendant's premises in connection with the portion purchased by said Wales, and that at the time of the purchase said Stone surveyed off said portion and had a stone placed at the corners, supposed by him to be on the line between him and the Ball property, of which the plaintiff's premises then formed a part; and that said Wales sold that portion of his purchase conveyed by the deeds " M " and " N," and at that time placed a stone as a corner between the purchasers under the deeds " M " and " N," which was 47½ feet (and so stated in one of the deeds) from the northwest corner of his purchase, as made by said Stone, and claimed by him to be on the line of the Ball property. The plaintiff's evidence further tended to show that his surveyors used said deeds " M " and " N " to fix the west end of said blue dotted line ; that the stone placed as a corner between the purchasers under " M " and " N " was

still visible, and was pointed out by the purchaser Simonds, and measuring north 47½ feet, they found a stone, and an old stake standing by the side of it, which they made the west end of said blue dotted line. The plaintiff introduced said Wales, who testified to his measuring out his original purchase of Stone, and of the division of a part of the same between Simonds and Esterbrooks; and on cross-examination testified that he erected a barn on part of the premises he purchased of said Stone, and placed the northwest corner of the same six inches southerly from a line extending between the two corners as fixed by Stone. The plaintiff's surveyors had also surveyed for the defendant, and testified that the red dotted line ran to and was fixed at its westerly extremity by a point six inches northerly of the northwest corner of said barn erected by Wales. After evidence tending to show the foregoing facts had been introduced, the court allowed said deeds " M " and " N " to be read by the plaintiff to the jury, as tending to show where said Stone claimed said line to be at that time and point; and also to show how the plaintiff's surveyors fixed the westerly end of the blue dotted line, the court at the same time remarking that they were not evidence to show where the line was originally located.

There was no evidence in the case tending to show that the defendant or his grantors ever recognized the act of Wales in making the division of part of his purchase of Stone, as indicated by deeds " M " and " N "; or that they, or any of them, had any knowledge or notice that the corner between the purchases under " M " and " N " was 47½ feet from the corner, as fixed by said Stone, until this controversy commenced; nor was there any evidence that Wales or Simonds ever owned, occupied or claimed any land now owned by the defendant which is bounded by the plaintiff's land. The counsel on both sides treated the deeds as evidence in the case in their arguments to the jury; the plaintiff's counsel claiming that these copies, in connection with the parol evidence, and the other testimony tending to show the possession and occupation by the owners on each side, showed that the " blue dotted line " was the true line.

The defendant made no request to the court to give any specific

charge in regard to the use or bearing of said deeds " M " and " N," in connection with the other testimony. No exception was taken to the charge of the court to the jury by either party.

The jury returned a verdict for the plaintiff, finding specially that the " blue dotted line," as indicated on the plaintiff's plan, was the true line between the plaintiff and defendant.

The defendant filed a motion to set aside the verdict. The court overruled the same; to which the defendant excepted.

The defendant also filed a motion in arrest of judgment. The court overruled this motion also, to which the defendant excepted.

### Description of land in the Declaration.

" Bounded on the north by the street laid out by J. H. & W. H. Esterbrooks, on the east by south Main street, on the south by lands of the said Thomas Judge, and on the west by lands of George Fisher. All of said tract or parcel of land being in the east village of said Brattleboro."

The motion in arrest is in the usual form : " for that the plaintiff's declaration is insufficient to base any judgment upon."

The motion to set aside the verdict, so far as the same is important in this court, is as follows :

" 2d.   Because neither the plaintiff's declaration or said verdict in any manner show what lands the jury find the plaintiff entitled to recover the seizin and possession of.

" 3d.   Because the court permitted the jury to find and determine, by reference to a plan which is no part of the pleadings, files or records of this court, that a certain " blue line " was the original line between the possessions of the plaintiff and defendant."

*Charles N. & S. T. Davenport*, for the defendant.

*Clarke & Haskins*, for the plaintiff.

The opinion of the court was delivered by

PECK, J.   The defendant excepts to the ruling of the court in admitting the deeds, one marked M. from Elijah B. Wales to George W. Esterbrooks ; the other marked N. from said Wales, to John B. Simonds, both dated August 6, 1850.   The dispute

on trial was as to the division line running eastwardly and westwardly between the land of the plaintiff and that of the defendant. It appears by the exceptions that the plaintiff's land is a portion of what was originally the Ball land, lying adjacent to and bordering on the defendant's land — the residue of the Ball tract of land extending farther west than either the plaintiff's or the defendant's land ; and that the defendant's land is a part of what was originally the Hotchkiss land ; . the residue of the Hotchkiss tract of land extending farther west than the land of either of these parties, and bordering on the Ball land. Hence an important question was, as to the location of the line between the Ball land and the Hotchkiss land. There is no dispute but that the post standing in the front-yard fence between the parties is in the division line. The important question was, to what point this division line ran in extending westwardly from this post ; the plaintiff claiming the line in its course westwardly bore a little more southerly than the defendant claimed it did. The evidence in the case, introduced by the plaintiff without objection, tended to show that the division line between the Ball land and the Hotchkiss land was a straight line, not only between the land now owned by the plaintiff and that now owned by the defendant, but in the same course along past the land conveyed by Alanson Stone to Wales, and by Wales conveyed to Esterbrooks, and to Simonds, severally, by the deeds objected to by the defendant. It appears from evidence not objected to, that this land so deeded to Wales was part of the Hotchkiss land lying west of the defendant's land, and bordering on the Ball land lying north. The evidence introduced before these two deeds were introduced, tended to show that when Stone conveyed this land to Wales, he owned, in connection with it, the land in question east of it, which the defendant now owns ; the defendant's title coming through a subsequent conveyance from said Stone. As the defendant claims through Stone, it was competent for the plaintiff to show where Stone, while he owned the defendant's land, and that deeded to Wales, claimed the division line to be between the Hotchkiss land and the Ball land, being the original line between the lands of the parties to

this suit.   But it is objected to these deeds that there was no evi-
dence that the defendant or his grantors ever recognized or had
notice of the particular division made by Wales by these two
deeds.   But it is not necessary that there should be any such evi-
dence.   The evidence is, that the description of the land in these
deeds was made by measurement from the muniment set by Alan-
son Stone, as the line between this land and the Ball land at the
time he conveyed to Wales; and these two deeds from Wales
were evidence, in connection with the other evidence, to enable
the surveyors to find and locate the line as fixed and recognized
by Alanson Stone; and were properly admitted and used for that
purpose.

The motion in arrest for the insufficiency of the declaration is
based on an alleged uncertainty in the description of the premises
sought to be recovered.   The description in the declaration is,
" bounded on the north by the street laid out by J. H. and W. H.
Esterbrooks, on the east by south main street, *on the south by
lands of the said Thomas Judge*, and on the west by lands of
George Fisher," and being in the east village of Brattleboro.   The
declaration supposes the defendant to be in possession of land of
the plaintiff lying north of and adjoining ·the defendant's land.
But the land which the plaintiff by his declaration claims to own
and recover, being bounded on the south by the defendant's land,
the declaration leaves it uncertain to what extent or to what limit
the plaintiff claims.   It is true he claims to recover to the divis-
ion line between the land of the plaintiff and the land of the de-
fendant; but where that line is, is the very question in dispute;
and the plaintiff by his declaration does not show where he claims
it to be.   Hence a verdict and judgment, that the plaintiff recover
the premises described in the declaration, only established the
plaintiff's title and right of possession of the premises extending
south to the defendant's land; but where that boundary is, the
record furnishes no means of determining.   It is impossible to
ascertain to what limits the plaintiff showed title, or for how
much or to what extent the recovery was had.   The action of
ejectment by our statute partakes of the nature of a real action,
and the judgment on the merits is conclusive of the title between

Davis v. Judge.

the parties and their heirs and assigns; and greater certainty of description is necessary than would now be required in ejectment at common law, where the action is a mere possessory action and the judgment not conclusive of title. The premises should be so described that the defendant may be able to ascertain for what he is sued, and that the record of the recovery may enable the plaintiff to point out to the sheriff, who serves the writ of possession, the land recovered, and that the record may furnish evidence of the limits to which the title is established by the judgment. The declaration does not answer these requirements. *Clark* v. *Clark*, 7 Vt., 190. Even if the deeds in the chain of title of the parties respectively could be referred to in aid of the record of the judgment, they would not supply the defect. The deeds in the chain of title of the respective parties have not been furnished us, but it is conceded that they all bound the land between the parties as the declaration does, each bounding the land by the land of the other. It is claimed that the special finding of the jury, that they found the line indicated by the blue dotted line on the plaintiff's plan to be the true line, cures the defect in the declaration. But the plan will constitute no part of the record; and even if it could be incorporated into the record, it does not sufficiently appear what facts the jury found as to the location of the blue dotted line, to enable it to be found and located on the land; for what the exceptions show the plaintiff claimed, and what the evidence tended to show as to its location, may or may not have been found to the full extent by the jury.

The judgment of the county court, overruling the motion in arrest and rendering judgment for the plaintiff, is reversed, but we do not proceed as we might to render final judgment arresting the judgment, but on motion of the plaintiff remand the case to the county court to enable the plaintiff to move that court for leave to amend.