HALE v. RICH AND ANOTHER.

*Plan. Declarations against Interest. Interruption of Adverse Possession.*

A plan of two adjoining lots, the location of the division line of which was in dispute, was made by one of plaintiff's attorneys, not a surveyor, and not from any survey of the lots. The plaintiff testified, and was not contradicted, that the plan was "all right, and located the land correctly, as near as he could see." *Held*, that said plan might properly be used by plaintiff's counsel, for the purpose of explaining to the jury what plaintiff claimed in relation to the location of said lots, and of the division line thereof, and that the jury might take the plan with them to the jury room.

The declarations of one in possession of real or personal property, qualifying or limiting the extent or character of his possession, are always admissible against those claiming under him. Thus, deeds from one under whom defendants claimed, to third persons, were *held* admissible against defendants, to show where the grantor understood the division line in dispute to be.

Plaintiff's testimony tended to show, that a certain fence was built by the grantors of the parties in the summer of 1856, as a division fence, and that plaintiff and his grantor had been in adverse possession to the fence a period of more than fifteen

years. It was conceded that in April, 1871, defendants cut a tree on plaintiff's side of the fence, and that soon after, a dispute arose in regard to the location of the division line; that the parties thereupon procured separate surveys of the line, which did not agree, and that each party was dissatisfied with the survey of the other, and that no agreement was made upon any line — the plaintiff all the time claiming that the fence was the true line, and the defendants, that the true line was some rods south thereof. *Held*, that all that could be fairly claimed from the facts was, that they *tended* to show that plaintiff's possession had been interrupted, and that it was properly submitted to the jury to find whether plaintiff had acquired title up to the fence, by adverse possession.

TRESPASS *qua. clau.* Plea, the general issue. Trial by jury, and verdict and judgment for the plaintiff, April Term, 1875, ROYCE, J., presiding.

It was conceded that the plaintiff was the owner of part of lot No. 10, and the defendants of part of lot No. 1, in the 4th division in Fairfield, at the time of the alleged trespasses ; and the question was as to the division line between said lots.

The plaintiff presented a plan of the two lots that was made by one of his attorneys, not a surveyor, and which it was admitted was not made from any survey of the lots. After the plaintiff had testified that "it was all right, and located the land correctly, as near as he could see," and his testimony was uncontradicted, it was proposed to use said plan in explaining to the jury what plaintiff's claim was in relation to the location of said lots, and where the division line was. The defendants objected to the plan being so used ; but the court admitted it to be used for the purpose above indicated ; to which the defendants excepted. In the charge, the court told the jury that the plan was only admitted for the purpose of simplifying the matter, for the benefit of counsel, in aiding them to explain to the jury where they claimed the land lie, and its relation to other pieces of land in that vicinity ; that it was just such evidence as counsel might have manufactured in the court room, to illustrate to the jury what they claimed as a representation of the lotting line between these two lots and the adjoinging lots, and hold up to the jury to explain to them the nature of their claim—that further than that it was not evidence—that it was not evidence of any actual survey. Said plan was taken by the jury, with the other papers, when the case was submitted to them.

The plaintiff's evidence in the opening tended to show, that there was a fence on the division line between said lots that had been built several years, starting at a beech-tree corner at the east end of said line, and extending westerly to a birch tree or stump, on the east side of what was called the Elm Brook, and near said brook, in an old mill-yard, which is about in the center of said line. The trespass complained of, and which the plaintiff's evidence tended to show, consisted in cutting and removing some trees which stood two or three rods south of the above mentioned fence and on the plaintiff's lot. The defendants' evidence tended to show that the line claimed by the plaintiff, and which his evidence tended to establish, was not the true line, and that the true line was further south, some four or five rods.

It appeared that in 1844 and 1845, one Mason Peters owned and occupied lot No. 1; and the plaintiff, in his rebutting testimony, offered in evidence copies of two deeds of parts of said lot—one to Weston & Chandler, dated Feb. 7, 1845, and one to Hannah Squires, dated April 21, 1845, as tending to show where Peters then understood the division line between said lots to be.

The description in the deed to Weston & Chandler, was as follows:

"Being a part of lot No. 1, in the 4th division of lots in Fairfield; commencing at a certain birch tree on the south line of said lot, on the flat, on the east side and near the Elm Brook, and running northerly on the east side of said brook, and near the foot of the ledge, 48 rods to a stake and stones; thence westerly, 34½ rods, to stake and stones; thence parallel with the cast lotting line, to the south lotting line; thence easterly on said south line, to the place of beginning; containing ten acres and forty-eight rods."

The description in the deed to Hannah Squires, was as follows:

"Being a part of lot No. 1, 4th division of lots in Fairfield; it being a part of the same that David A. & Laura —— deeded to me in 1844; commencing at the south-east corner of Chandler & Weston's mill lot, at a birch tree near the Elm Brook, and running easterly on the lotting line, thirty-two rods; thence

northerly, parallel with the east line of said mill lot, forty rods; thence westerly, parallel with south line of premises, thirty-two rods, to the east line of said mill lot; thence southerly, on said line, to the place of beginning; containing eight acres."

The defendants objected to this evidence; but the court over-ruled the objection, and admitted said copies for the purpose for which they were offered; to which the defendants excepted.

It appeared that a large portion of the plaintiff's lot was improved, but that there was a piece of wood-land extending southerly from said fence, and that the fence enclosed the wood land and improved land. The plaintiff claimed that he had acquired title to the land to the fence, by adverse possession; and testified that he bought that part of the lot then owned by him, on December 20, 1856, of N. W. Isham, and moved on to it about two years after; that there had been no interruption in his possession until December, 1871; that the fence was there when he bought the lot, and had remained in the same place ever since; that he had maintained the west part and the defendants the east part; that in April or May, 1871, he got Mr. Hull, a surveyor, to run the line; that the defendants had taken off one tree, and he wanted to see where the line was.

The only other evidence there was upon the question of when said fence was built, was the testimony of said Isham, who owned lot No. 10, in 1856, and who testified that in the summer of 1856, he and said Peters, who then owned lot No. 1, agreed to build a division fence between said lots, and did build one at or near where the fence now stands, and that he built the east part, and Peters the west part, and that they supposed the fence was built on or near the line; and the testimony of one Hull, who testified that he assisted in building said fence in the summer of 1856.

It was conceded that about the first of April, 1871, the defend-ants cut one tree on the south side of said fence, and that soon af-ter, a dispute arose between the parties as to where the true line between them was; that thereupon, the plaintiff, in April or May, 1871, procured one Hull, a surveyor, to run the line; that defendants were present at the time Hull run the line, and were dis-satisfied with the line run by him, and in May, 1871, procured

Hiram Leach, a surveyor, to run the line; that plaintiff was dissatisfied with the line run by Leach, and employed E. W. Jewett, a surveyor, to run the line in November, 1871. Said fence and lines so run were indicated upon a plan made by Jewett, and used on trial.

The defendants requested the court to instruct the jury, that said evidence and facts had no tendency to show that the plaintiff had acquired a title to said land by adverse possession, and that the plaintiff had not acquired title to said land by adverse possession; but the court declined to so hold, and submitted the question to the jury, under instructions as to what kind of possession the plaintiff must have had of the land, to acquire title thereto by adverse possession, and what would amount to an interruption of a possession once commenced, that were not excepted to. To the said refusal and ruling, the defendants excepted.

*Wilson & Hall*, for the defendants.

The plan introduced in evidence by plaintiff, and allowed to go to the jury under defendant's objection, was improperly admitted, for the following reasons : It was not made by a surveyor, nor by any one that had any knowledge of the premises marked out thereon. · Plaintiff's testimony had no tendency to show that he had any knowledge of the lines, location of the lots, and marked trees, indicated upon said plan. The same testimony might have been given by a person who had never seen the premises. Plans and maps showing the premises and lines in dispute, are only admissible .when they are made and verified by the oath of some person having knowledge of said lines and premises, and skill in such work ; and the witness must be able to testify that *all* upon the plan is correctly located. *Wood* v. *Willard*, 36 Vt. 82 ; *Bearce* v. *Jackson*, 4 Mass. 408 : *Smith* v. *Strong*, 14 Pick, 128.

The instructions of the court to the jury, upon the admissibility of this plan, do not obviate our objection, but rather support it.

The practice of admitting improper evidence with the expectation of being able to charge it out, and to prevent the jury from being biased by it, is commented upon and condemned in *Conn. & Pass. R. R. Co.* v. *Baxter*, 32 Vt. 805.

The deeds from Peters to Hannah Squires and Weston & Chandler, were introduced and admitted as evidence tending to show where Peters then understood the division line between said lots to be, and in this there was error. If the description contained in said deeds has any tendency to show where Peters regarded the line in dispute to be, it is in the nature of hearsay, and cannot be shown without first proving the death of Peters, and second, that he had actual knowledge as to the location of the disputed line, which is not shown. *Wood* v. *Willard, supra ; Powers* v. *Silsby,* 41 Vt. 288 ; *Hadley* v. *Howe,* 46 Vt. 142 ; *Miller* v. *Wood,* 44 Vt. 378. Said deeds were inadmissible because there was no evidence tending to show that the birch tree therein referred to was the same one claimed to by the plaintiff, and do not come within the rule admitting the declarations of former proprietors made when on the land, pointing out a particular object as being upon the line, when it appears that the object pointed out is the same one claimed by the party offering the evidence. The statement in the deeds as to the birch tree, has no tendency to prove where Peters understood the line in dispute to be, because the *nearest point* of the line in dispute is thirty-two rods east of said birch tree.

The court erred in submitting to the jury the plaintiff's claim of title by adverse possession ; but should have instructed them, from the evidence, that the plaintiff had failed to make out such claim. The conceded facts as to what transpired in April, 1871, and the acts of the parties from that time down to November, 1871, when Jewett's survey was made, would, in law, amount to an interruption of plaintiff's possession. *Wing, admr.* v. *Hall,* 47 Vt. 217. The act of defendants in cutting the tree south of the fence, was notice to plaintiff that they claimed land south of said fence ; and plaintiff acted upon such notice, by procuring surveyors, and going onto the land with the defendants to run the line. These acts had " the effect to entirely change the nature of their possessions, in respect to that of each being adverse to that of the other, so as to bring them within the operation of the statute." They would then be in possession, not adversely, but each

would be in possession according to their deeds, claiming to the true line.  *Admr. of Russell* v. *Maloney*, 39 Vt. 579.

*Farrington & McIntyre*, for the plaintiff.

The plan, in connection with the testimony of plaintiff, was admissible for the purpose offered.  It was not held to be substantive, independent evidence, but as explanatory of the plaintiff's claim, and properly went to the jury.  *Wood* v. *Willard*, 36 Vt. 82 ; *State* v. *Jerome*, 33 Conn. 265.

The deeds from Mason Peters, through whom the defendants claimed title, to Hannah Squires and Weston & Chandler, in 1844 and 1845, were admissible, to show that Peters recognized this birch tree as on the line between lots 1 and 10 ; thus tending to show where he claimed the lotting line at that time to be, and the extent of his claim and possession.  The declarations of Peters while he owned the land, and against his interest, that this birch tree was on the line, would be admissible.  Can they be less so when they appear under a sealed instrument ?  The fact that this testimony was offered in rebuttal and admitted, is no ground for exception.  It was within the discretion of the court.  1 Phil. Ev. 314, 318, note 104 ; 1 Greenl. Ev. s. 109 ; *Davis* v. *Judge*, 44 Vt. 500 ; *Wood* v. *Willard, supra; Carpenter* v. *Hollister*, 13 Vt. 552 ; *Beecher* v. *Parmalee*, 9 Vt. 352 ; *Deming* v. *Carrington*, 12 Conn. 3 ; *Hobbs* v. *Cram*, 22 N. H. 130 ; *Smith* v. *Powers*, 15 N. H. 547.

The question of title by adverse possession, was, under the instruction of the court, properly left to the jury.  The plaintiff's testimony tended to show that the fence was built in the summer of 1856, by agreement of the respective grantors of the parties, and that plaintiff's possession to this fence was uninterrupted until December, 1871.

The opinion of the court was delivered by

Ross, J.  I.  The plan of the two lots, the location of the division line between which was the subject of controversy, was made by the plaintiff's attorney, not a surveyor, and not from any survey of the lots.  The plaintiff testified, and was uncontra-

dicted, that "it was all right, and located the land correctly, as near as he could see." The defendants excepted to the ruling of the court allowing the plaintiff to use this plan for the purpose of explaining to the jury what his claim was in relation to the location of the lots, and where the division line was. The charge of the court to the jury, limited the plaintiff's use of the plan strictly to this purpose. We find no error in this ruling. It falls within the principle announced in *Wood et al.* v. *Willard et al.* 36 Vt. 82. The plan has been produced before this court. When compared with the plan made from actual survey by E. W. Jewett, we see nothing in it that does not fairly represent what he claimed in relation to the location of the two lots, the highways, brook, and other natural objects on them, as well as the location of the pieces sold from the defendants' lot by their grantor, Mason Peters. We do not think that it is a prerequisite to the admission of a plan for such a purpose, that it should have been made from an actual survey. If the court can see that it is a fair representation of the location of the lots, lines, and natural objects, as the testimony of the party introducing it tends to establish them, it is the right of the court to allow the party to use it, not as evidence, but by way of illustration and presentation of his claims to the jury. Such plans stand related to the triers very much the same as a personal inspection of the locality. From such inspection, the jury would not obtain accurate knowledge of distances, but would obtain a general idea of the relative location of various objects that would be likely to be brought out in the testimony, and in that manner receive aid in understanding, applying, and giving the proper influence to the testimony. It would be the duty of the court to reject any plan that would tend clearly to mislead the jury, or would not fairly represent the relative location of the various objects referred to in the testimony, and having more or less bearing in determining the issue between the party. The defendants' counsel have especially complained that the jury were allowed to take the plan with them to the jury-room. No exception was taken to this action of the court; but, as is said by the court in *Wood* v. *Willard*, if it is permissible to show a plan to the jury for the purpose of aiding

them in understanding, applying, and weighing the testimony, we do not see why they do not need, and should not have, that aid so long as they have the testimony under consideration.· We think the defendants have no occasion to complain, in this respect, of the action of the County Court.

II.   Mason Peters is a grantor in the defendants' chain of title. As late as 1856, he was in possession of the defendants' lot, and in connection with N. W. Isham, the then owner of the plaintiff's lot, located and built the fence which the plaintiff claimed was on the division line between the two lots.   The defendants claimed that the division line of the lots was a few rods southerly of this fence.   To rebut the testimony introduced by the defendants to establish the line as they claimed it, the plaintiff was allowed to use in evidence copies of two deeds given by Mason Peters while he was in possession of the defendants' lot, conveying parcels of the lot lying northerly of the disputed territory, and contiguous to the plaintiff's lot.   The division line between the lots is a straight line.   The description in these deeds commences at a certain birch tree, and runs easterly and westerly along the division line.   The evidence tended to show that this birch tree was on or near the line as the plaintiff claimed it.   The declarations of one in possession of real or personal property, qualifying or limiting the extent or character of his possession, are always admissible against those claiming under him.   The defendants claim under Mason Peters.   On this principle, his declarations in these deeds, as to the location of the division line between these lots, were properly admitted against the defendants.   *Davis* v. *Judge*, 44 Vt. 500.

III.   The defendants have excepted to the ruling of the court, submitting whether the plaintiff had acquired title to the land southerly of the fence by adverse possession.   It was the duty of the court to submit this question, if there was any evidence tending to establish it.   The plaintiff's testimony tended to show that the fence was built for a division fence by the grantors of the parties, in the summer of 1856, and that the plaintiff and his grantor had been in possession to the fence till December, 1871,

29

more than fifteen continuous years. It was conceded that in April, 1871, the defendants cut a tree on the plaintiff's side of the fence, and that soon after, a dispute arose in regard to the location of the division line ; that the plaintiff procured surveyor Hull to run the line ; the defendants procured surveyor Leach to run it; and in November, 1871, the plaintiff had E. W. Jewett run it. No two of the lines thus run were located in the same place, and neither of them was agreed to by both parties as the true line. All that time the plaintiff claimed that the fence was on the line, and the defendants, that the true line was some rods south of the fence. The defendants claim that these conceded facts are an interruption of the plaintiff's possession. We think that no more can fairly be claimed for them than that they tended to show such interruption, and that the court committed no error in submitting to the jury, under proper instructions, to find whether the plaintiff had acquired title to all land south of the fence, by adverse possession. The facts in the case at bar are unlike those in *Admr. of Russell's Estate* v. *Maloney*, 39 Vt. 579. In the latter case, the parties mutually agreed to waive the line that had been run, and to get a surveyor and have the line rerun. The court held, that after this agreement, and until the line was rerun, each party's possession was coextensive with his deed, and no further. There is no statement in the exceptions of any evidence tending to show that the plaintiff, after the dispute arose, abandoned, or agreed to abandon, his possession to the disputed tract.

We find no error in the proceedings in the County Court, and the judgment of that court is affirmed.