BURTON, Circuit Judge,
after stating the facts as above, delivered the opinion of the court.
To entitle the plaintiff to recover the logs in question from the defendants, it was essential for him to show either a general property, or a right to their possession. Plaintiff sought to show title .and right of possession by evidence of title to the lands from which they had been severed by defendants without his consent. While the timber stood on the land, it was part of the realty. When severed, its character was changed, for it became personalty; but the title was not changed if the severance was wrongful, for it continued to be the property of the owner of the land, and could be taken by him from any one who had thus acquired possession. Schulenberg v. Harriman, 21 Wall. 44-64.
Plaintiff’s proof failed to show a connected legal title to the land from which these saw logs had been severed. Without considering .a number of objections which were made to his chain of title, it is sufficient for the purposes of this case to say that the deed from Daniel Breck to N. O. Morse, made September 13, 1865, was inoperative as a conveyance of any particular land. Breck’s immediate grantor was Thomas Duckham, who, by deed of July 17, 1838, conveyed to Daniel Breck “all of said Duckham’s interest in a tract of land in the county of Estill, Kentucky, patented in the name of John Oarnan, containing 29,000 acres,” and warranted the title “against all persons claiming by, through, or under him, except so far as he may have heretofore sold by written contract.” There was no other or further description of the interest intended to be conveyed. It appears that there were many persons claiming interests under this Oarnan patent,—some by virtue of conveyances from Flahaven, to whom Oarnan had conveyed a part of the lands, and others under agreements or contracts with Duckham or his vendors. For the purpose of ascertaining these interests and partitioning the *957 land embraced within the Carnan patent, a suit in equity was instituted by Duckham against one Fishal and others. In 1852 air order was entered appointing commissioners to survey the entire John Carnan patent, and divide it among the heirs of one Haggins, and the’ heirs of one Beatty, and Daniel Breck, who, pending the suit, had taken a conveyance from Duckham of his interest in the John Carnan tract of land, and who had intervened and become a party to the said suit. The said commissioners reported a plan of division between the parties thus interested in the said land, which report was confirmed August, 1853, and the parties interested ordered to release to one another the tracts allotted them. No deeds appear to have been executed according to the directions of this decree. September 13, 1865, Daniel Breck conveyed to N. C. Morse “all the lands in John Carnan’s survey and patent of 29,823 acres allotted to him in the division between him and Haggins’ heirs and Samuel Beatty,” etc., “except what has heretofore been sold by him or by those under whom he claims, and excepting also the claim of any one whose actual adverse possessions has been so long as to bar a right of entry.” This is the only description of the lands intended to be conveyed -by the deed to said Morse. In the decree of partition, before mentioned, there occurred the following paragraph:
“But it is alleged that Duckham has sold and conveyed portions of said tracts, before or since he conveyed one moiety of the 23,000 to James Hag-gins, so that Haggins’ heirs will not have their moiety unless all such sales be allotted to Breck, as assignee of Duckham. To enable the court to decide on this part of the case, the surveyor and commissioners are directed to ascertain and lay off in quantities and value, as near as may be, charging to* Breck any land sold by Duckham before his deed to Breck and to Haggins’ heirs all the land sold by the ancestors or themselves, and make a division, so as to give each party their equal moiety, noting upon their plat and in their' report the tract or tracts sold, when and to whom sold, as nearly as they can ascertain.”
Tbe surveyor and commissioners did not ascertain and lay off tbe lands theretofore conveyed by Duckbam, tbougb there appear in tbe record filed in this cause of tbe proceedings in tbe case of Duckbam against Fishal and others no less than 12 deeds made by Duckbamprior to bis conveyance to Breck, of lands lying within tbe general boundaries of that portion of tbe Carnan grant claimed by him. For purposes of partition, tbe commissioners and surveyor appointed under tbe said decree divided tbe lands into a number of large tracts, numbered from 1 to 8, inclusive. Lots Nos. 4, 5, and 6, according to this plan of division, were allotted to Daniel Breck. Touching so much’ of tbe decree as directed that tbe sales made by Duckbam or otherssbould be surveyed and laid off on tbe plan of said division, tbe commissioners reported as follows:
“The parties, on account of trouble and expense, superseded the necessity by consent of running and marking the long lines, and agreed that the division might be made on paper. They were unwilling that the sales made by Duck-ham and others should be surveyed and laid down on account of trouble and' expense, but, from what the commissioners have learned, the principal portion of the land sold by Duckham are located in the lots assigned to Breck. The’ division was made, as near as might be, with the object that the Breck lots-might be incumbered with the Duckham sales. Kobt. Wickliffe, Esq., for' *958 Haggins’ heirs, and Hon. Daniel Breck for himself in person, consented, and directed the division in part to be made on paper.”
No evidence was offered by the plaintiff to show the location of the lands theretofore conveyed by Duckham, nor was there any proof offered to show that the timber cut by the defendants had not been taken from the lands excluded from those set off to Breck as aforesaid. ' After Morse acquired Breck’s title, he caused the land claimed by him to be subdivided into a large number of lots, most of which contained 100 acres each. Of these lots, Morse conveyed to August Kuchenmeister, through whom Webb holds, lots Nos. 20 to 45, inclusive, each containing or purporting to contain 100 acres, and three smaller parcels, one of 15 acres, one of 13, and one of 10 acres, the whole including 2,438 acres, and being but a part of that set off to Breck by the decree of partition in the suit heretofore mentioned. No notice appears to have been taken of the fact in making this subdivision that within the general boundaries of the land conveyed by Breck to Morse were included no less than 12 parcels theretofore conveyed by Duckham, Breck’s predecessor in title, to other persons, and that the deed under which Morse claimed title excluded all such prior conveyances from the land conveyed by Breck to him. To what extent these excluded tracts or parcels were included within the lots conveyed by Morse to Kuchenmeister, and ultimately by Kuchenmeister’s vendee to the plaintiff, was not shown. It is true that 12 deeds made by Duckham to various parties prior to his sale to Breck were included in the record of the partition suit put in evidence by plaintiff; but no evidence was offered to show the location of those parcels. Counsel for the plaintiff in error have endeavored to locate these excluded lands by aid of the calls in the report of partition and the calls of the several deeds, and thus show that none of them are within the tract of land claimed by Webb, from which these logs were cut. This, in our judgment, is utterly inadmissible, in view of the character of the calls and general description of the excluded parcels, and cannot be regarded as a substitute for a survey and definite proof. To illustrate the impossibility of establishing plaintiff’s title by this method of locating excluded parcels, it is only necessary to set out the boundaries of one of these Duckham deeds, being that from Duckham to John Akers, dated October 17, 1835. The description in that deed is as follows:
ii* * * ^ certain, tract or parcel of land, part of a survey of twenty-nine thousand acres patented to John Oarnan, lying and being in the county of Estill and state of Kentucky, af’d and bounded as follows [to wit]: Beginning at the first falls of Contrary creek from the thicket where the cut out road passes; thence, up a small branch nigh the said falls, to a poplar tree, where there is three out of one root at Miller’s old trace; thence, with the said trace, to the thicket; thence, crossing the road, and down the path between the two creeks opposite Barker’s Rock house, to a stake; thence a straight line across to the path that leads to the Rock Shole; thence, up the path, to the place of beginning. * " *”
The counsel for plaintiff in error frankly admit the difficulty of locating a tract whose area is not given, upon a record which contains no legal evidence as to the locality of the “first falls of Contrary creek,” or “the thicket where the cut road passes through,” *959 or “of Miller’s old trace,” or “the Rock Shole,” or the “poplar tree where there is three out of one root,” but have advanced a theory based on what they call the “probabilities,” which, however plausible, cannot be accepted as a basis for supporting a title. It may be that each of these excluded parts can be identified by proof, and the deed made certain as a conveyance of land; but upon this record no such identification of the lands excluded from those included in the deed can be made, and the deed must therefore be treated as insufficient evidence of title. Plaintiff should have gone further, and shown by proof that the land covered by his deed did not include the excluded lands. The burden of doing this.was upon him, and he has not discharged it. It was essential that plaintiff should show that the trespass committed by defendants in entering upon lands claimed by him was'within the limits of land conveyed to him, and this he could only do by showing that these logs were not cut' within one or other of the tracts of land excluded from the conveyance under which, through subsequent deeds, he now claims. This is not an open question in the land law of the state of Kentucky. Dembitz, Land. Tit. 40, 41; Madison v. Owens, Litt. Sel. Cas. 281; Taylor v. Taylor, 3 A. K. Marsh. 20; Guthrie v. Lewis, 1 T. B. Mon. 142; Hawkins v. Barney’s Lessee, 5 Pet. 457; Land-Grant Co. v. Dawson, 151 U. S. 603, 14 Sup. Ct. 458.
There was evidence that N. C. Morse, one of plaintiff’s predecessors in the title, took possession of the land conveyed to him by Breck through one John’Warner, who entered under a lease executed in 1872. The evidence of an actual possession by John Warner under this lease is most doubtful. That he accepted the lease was proven. But that he ever took actual possession is not shown, save in the most equivocal way. But, assuming that he did take possession, he stayed in possession at most but a few months. In some way, the clearing which John Warner made or started to make, and the cabin he began to construct, were taken possession of by one Aaron Warner, a son of John. It is also clear that Aaron was holding for himself, or some one other than Morse, for he is shown to have remained in possession more than two years, and at the end of that time to have successfully resisted an action by Morse to dispossess him. Thus, whatever possession Morse or any of plaintiff’s predecessors in title may have had lasted less than a year, and terminated more than twenty years before this suit was brought. Prom the time John Warner abandoned the possession, the lands claimed by plaintiff have been vacant and unoccupied, except in so far as occupied and claimed by Aaron Warner in hostility to the title Webb claims. There was therefore no actual possession by plaintiff at the time defendants entered and severed the logs in question from the soil.
Proof of actual possession of land will make a prima facie case of title and right as against any but the true owner or one connecting his title with him. Upon such evidence, a prima facie case of right to the dominion and possession of timber severed from the land by a mere wrongdoer would support an action of replevin. Such evidence at the common law and under the law of Kentucky would *960 support ejectment against one not showing a better title. Allen v. Rivington, 2 Saund. 111; Jackson v. Hazen, 2 Johns. 23; Smith v. Lorillard, 10 Johns. 338-355; Steele’s Heirs v. Logan, 3 A. K. Marsh. 394; Campbell v. Roberts, Id. 623; Fowke v. Darnall, 5 Litt. 319; Bower v. Higbee, 9 Mo. 259; Harlan v. Harlan, 15 Pa. St. 507; Powell v. Smith, 2 Watts, 127. But mere evidence that at a remote time the plaintiff or one under whom he claims had had a short possession is insufficient to sustain ejectment, under the well-settled law of Kentucky.
In the case of Sowder v. McMillan’s Heirs, 4 Dana, 456, it was-determined that the priority of possession which will enable a plaintiff to recover in ejectment is a possession continuing at the time of the entry by the defendant or those under whom he claims. It is the fact that the entry of the defendant ousted the plaintiff from possession which justifies the maintenance of ejectment on the prima facie case 'arising from mere proof of possession. It is therefore clear that a possession which was abandoned more than 20 years before the entry of defendants will not raise a prima facie case of right, unless it was continued long enough to give title under the statutes of limitation in force. Of this there was no pretense. Plaintiff failed to show constructive possession by proof of title, and he failed to show actual possession which might have been sufficient against such intruders as we must assume defendants to have been on this record. There was therefore no error in directing a verdict for the defendants, as no other result could have been legally reached on the evidence submitted by plaintiff.
There was no error in entering judgment for the defendants on the verdict for the value of the saw logs, with interest from the date they were taken out of the possession of defendants. The Kentucky Code provides as follows: ■
“In an action for the possession of specifie personal property the plaintiff may have judgment for its delivery, if it can be had; and, if not, for its value and for damages for its detention. If the property has been delivered to the plaintiff, and the defendant claim a return thereof, judgment for the defendant for the return of the property, or its value if a return can not be had, and damages for the taking and withholding of the property.” Carroll’s Code, § 388.
The jury were instructed, in substance, to find the value of the property taken from the defendants’ possession as of December 15, 1892, that being the date when taken, and that they could add to this interest for detention, at not exceeding 6 per cent, per annum, or that, if they simply fixed the date when taken and value on that date, interest from that date would follow as matter of law. The jury did return that they found for the defendants, “and assess the value of the property at $2,460.00, as of December 15, 1892.” It was not error to instruct the jury to find interest upon the value of property thus wrongfully taken from defendants’ possession as damages for detention; nor was it error to render judgment upon such a verdict for the value thus assessed with interest from that date. There is no direct authority in the decisions of the Kentucky court, but, under like statutes, interest has been held to attach from the date of the taking, as damages for the detention. Cobbey, Repl. §§ *961 880, 877, 888; Ice Co. v. Webster, 125 U. S. 426, 8 Sup. Ct. 947; Kelly v. McKibben, 54 Cal. 192; Hurd v. Gallaher, 14 Iowa, 394. Judgment affirmed.