[Civ. No. 410.  Third Appellate District.—April 7, 1908.]

# SAMUEL HILL, Respondent, v. CHARLES BARNER, etc., et al., Appellants.

ACTION TO QUIET TITLE—LACHES—PLEADING—OBJECTION UPON APPEAL. If the defendants, in an action to quiet title, rely upon the laches of the plaintiff, they must specially plead it, so that an issue thereon may be squarely presented to the trial court. An objection raised on that ground for the first time, upon appeal, cannot be considered.

ID.—BURDEN OF PROOF TO SHOW TITLE—RESERVATION IN DEED TO GRANTOR.—The plaintiff in an action to quiet title must prove the title claimed by him by sufficient evidence. The location of its boundaries must be affirmatively shown; and where there is an express reservation of land in the deed to a grantor under whom plaintiff claims title, the burden of proof is on the plaintiff to show that the land claimed is within the limits of his title, and not within the reserved portion.

ID.—IDENTIFICATION OF BOUNDARIES REQUIRED—JUDICIAL NOTICE.—It was incumbent on the plaintiff, in order to trace his title, and to identify it with that of his grantor, to show that the lots claimed were not within the excepted tract. His failure to do this leaves a missing link in his claim of title. The courts cannot take judicial notice of the exact location of the boundary lines included in the reserved portion.

ID.—GRANT OF RIGHT OF WAY TO RAILROAD COMPANY—UNCERTAIN BOUNDARIES—UNSTABLE FINDINGS AND JUDGMENT.—Where plaintiff's grantor conveyed a right of way one hundred feet in width to a railroad company, which claims a prescriptive right to four hundred feet, and plaintiff's complaint, proofs, findings and judgment are too vague and uncertain as to the boundaries of the right of way granted, in reference to the lots claimed by plaintiff, to give any stability to the findings and judgment for the plaintiff, for the purpose of pointing out the extent and location of the land reserved, the findings and judgment for the plaintiffs cannot be upheld.

ID.—PRESCRIPTIVE RIGHTS OF RAILWAY COMPANY—SECOND TRIAL.—It is not necessary to determine for the purposes of this appeal whether the railroad company has acquired a prescriptive right of way of four hundred feet in width, though there is much evidence tending to establish it. And if, upon the second trial, it is found that the land, or any portion thereof, upon which a stock corral claimed by the railroad company by prescriptive title is situated without the limits of its right of way, there is abundant evidence that such cor-

ral was inclosed for upward of thirty years prior to the commencement of the action.

ID.—STOCK CORRAL—NECESSARY ADJUNCT TO RAILROAD BUSINESS—PRESCRIPTION.—A stock corral is a necessary adjunct to the transportation business of a railroad corporation; and a prescriptive title may be acquired thereto by the railroad company.

ID.—INSUFFICIENT REBUTTAL OF PRESCRIPTIVE TITLE—LETTERS FROM INDIVIDUAL—AUTHORITY NOT SHOWN.—It was prejudicial error to admit in evidence, in rebuttal of the prescriptive rights claimed by the railroad company in the stock corral, a letter written by an individual to the assessor, not shown to have been authorized by the railroad company, stating that the railroad company did not claim the stock corral.

ID.—EQUITIES OF LESSEES NOT SHOWN BY PLEADINGS—REVIEW UPON APPEAL.—The equities of lessees of the railroad company, not presented by any pleadings in the action, cannot be determined upon their appeal.

APPEAL from a judgment of the Superior Court of Shasta County, and from an order denying a new trial. Charles M. Head, Judge.

The facts are stated in the opinion of the court.

Sweeney & Tillotson, and Reid & Dozier, for Appellants Charles Barner et al.

Wm. Singer, Jr., Guy Shoup, and G. O. Perry, for Central Pacific Railway Company, Appellant.

Braynard & Kimball, and T. W. H. Shanahan, for Respondent.

HART, J.—Action to quiet title.

The court below gave plaintiff judgment quieting his title to the land in dispute, and it is from said judgment and the order of the court denying the defendants a new trial that this appeal is taken.

A motion to dismiss the appeal herein was submitted by the respondent, but it is clearly without merit, and, therefore, does not demand extended notice. The motion is denied.

The premises in controversy are described in the complaint as follows: "Lots numbered 1, 2 and 6, situate in that certain block which said block is bounded on the north by the north-

erly line of what is commonly known as, and called, Short street; on the east by the westerly line of Center street; on the south by the northerly line of Shasta street, and on the west by the easterly line of the right of way of the Central Pacific Railway Company, a corporation, as said lots and said block more fully appear and as the same are designated by and upon the official map of said City of Redding, now on file in the office of the County Recorder of said County of Shasta.''

Another appeal is pending before this court and the same submitted with the case at bar, in which the respondent here is plaintiff and Joseph Hoefer et al. are defendants and appellants (No. 411), and which involves the title to lots numbered 3, 4 and 5, situated in the block described in the complaint in the case we are now considering. Counsel representing, respectively, the several parties to the case at bar also represent, in the same positions, relatively, the parties to case No. 411, and it was stipulated by said counsel that the evidence and the proceedings taken and had in the one case should be considered as applicable to the other. An examination of the records in both cases justifies us in saying that the evidence and proceedings in both are practically the same, and that, as in each case plaintiff undertakes to establish a record title and the defendant, railroad company, title to some alleged portions of the premises in dispute in both cases by adverse possession or prescription, the legal principles involved, and which we are required to consider, apply the same to the one case as to the other.

The principal and important question presented in both cases, as we view the records, is, Does the evidence support the material findings of the court?

In order to a clear understanding of the situation presented by the record in the case before us some reference must necessarily be made to the facts brought out at the trial.

The land in dispute is a portion of a Mexican land grant known as the Rancho Buena Ventura, situated in Shasta county, and granted by the United States government to one Pearson B. Reading, the patent therefor having been issued to said Reading, confirming his title to said grant, in the year 1856.

Later J. B. Haggin became the owner of said grant by purchase at a sheriff's sale thereof, said sale having been ordered

by the district court of the third judicial district of California in pursuance of a decree of said court foreclosing a certain mortgage on said grant executed by said Pearson B. Reading to one Samuel J. Hensley to secure a loan by the latter to the former of $34,438.32. The deed of the sheriff to Haggin, however, excepted and reserved from said sale a certain portion of said rancho, which said portion so excepted and reserved is described in said deed.

In September, 1872, Haggin conveyed by deed to the Central Pacific Railroad Company, the predecessor in interest of one of the defendants herein (the Central Pacific Railway Company) a strip of land one hundred feet wide, being a portion of the Rancho Buena Ventura in Shasta county, "upon the located line of the California and Oregon Branch of the Central Pacific Railroad Company's railroad, the full length of said line through said grant." In this connection it may be stated that the evidence shows that from and including the year 1888 to and including the year 1890, the railroad company was assessed on a right of way of one hundred feet in width through the town of Redding, and that from and including the year 1891 to and including the year 1903, with the exception of the years 1892 and 1894, in which the assessment did not specify the width of the right of way through Redding, the width of the right of way through said town of Redding, as appeared by the assessment made by the state board of equalization, was four hundred feet. Portions of the premises in question were leased to a firm known as Kahny & Burgbacher and a firm known as Barner & Riebe. Said leases were executed by the Southern Pacific Company, lessee of the Central Pacific Railroad Company, to the firms mentioned. The lease to Kahny & Burgbacher was dated March 12, 1888. The lease to Barner & Riebe was dated February 11, 1896. Kahny & Burgbacher erected a wooden structure on the land leased to them in the year 1888, and used the same for the purpose of carrying on the beer bottling business, and in the year 1898 they erected a new wooden structure in the place of the old one, likewise using it for beer bottling purposes. This firm remained in possession of said premises under the lease from the Southern Pacific Company until the year 1900, when said firm transferred the possession of the building and premises to the San Francisco

Breweries, Limited, a corporation, and one of the defendants in case No. 411.

Barner & Riebe took possession of the premises under a lease from the railroad company to the Buffalo Brewing Coming, one of the defendants in case No. 410, erected buildings thereon, and conducted a beer bottling business as agents of and for said Buffalo Brewing Company. The block in which the lots in dispute in both cases are situated is commonly known as ''The Stockyard Block.'' The stockyards and corral used by the railroad company at Redding are, it is claimed by appellant, situated partly upon some of the lots in controversy.

In February, 1886, Haggin appointed and constituted one Edward Frisbie his attorney in fact, vesting him with full power to ''bargain, sell, transfer, grant and convey all his right, title and interest to any and all lots, pieces or parcels of land in the towns of 'Anderson and Redding.' '' Said power of attorney was duly recorded.

Frisbie, for Haggin, on June 19, 1903, conveyed to the plaintiff and one Alva Gus Hart ''Lots 1, 2, 3, 4, 5 and 6, designated on the map of the original town of Redding, filed in the office of the County Recorder of Shasta County on September 25, 1872, as the 'Stockyard' Block.''

On July 2, 1903, Hart conveyed all his right, title and interest in and to said lots to the plaintiff.

The stock corral was built in the summer of 1873, and has since been maintained and used as a stock corral by the railroad company.

The foregoing statement embraces, practically, all the important uncontroverted facts brought out at the trial.

As we have seen, the appellant, railroad company, contends that the width of its right of way through the city of Redding is four hundred feet, to three hundred feet of which title was acquired by adverse possession.

The other defendants claim no interest in any of the land except as lessees of the railroad company.

It is also contended by said company that the plaintiff failed to connect himself with the Haggin title, through which he undertakes to deraign title to the lots in controversy, because (1) he has not shown that said lots are within the boundaries of the grant; (2) that, if it appears that the lots are within the boundaries and a part of the rancho, he has not shown

that they are not within the portion of the grant excepted and reserved from the sale, under the foreclosure proceedings, of said grant by the sheriff to Haggin, as evidenced by said sheriff's deed of conveyance. It is also declared that if the judgment, resting upon the facts as found by the court, is permitted to stand, the railroad company will thereby be deprived of a portion of the right of way through the town of Redding granted to it by Haggin. It is further urged that the plaintiff is guilty of laches in the assertion of his claim of title; but as to this point, we think there need be no discussion, as the proposition seems to have been raised for the first time in this court. We think it is well settled that where laches is relied upon as a defense, it should be specially pleaded, so that an issue as to such defense may be squarely presented to the trial court. There are other points urged and discussed by appellants, but it will not be necessary to specially notice all of them.

By a most careful examination and consideration of the evidence disclosed by the record, we are forced to the conclusion that the contention of the appellants that the plaintiff failed to establish his title to the lots in dispute is well-founded. In other words, we think that it is clear that he has not shown that the lots which are the subject of this litgation are not within the portion of the grant excepted and reserved from the sale evidenced by the deed from the sheriff to Haggin.

That part of the deed declaring the exception and reservation mentioned reads as follows: " . . . Excepting, however, and reserving from said sale all that part of said rancho which is described as follows, to wit: Commencing on the north bank of Cottonwood Creek, at the point where the west boundary line of said Rancho Buena Ventura intersects said creek, in section or subdivision 64, as shown on the private survey of said rancho made by the late P. B. Reading; the map of which is of record in the office of the County Recorder of said County of Shasta and running thence down said creek to the north bank thereof to the Sacramento River; thence along the west bank of the Sacramento River to the point where the line between fractional sections 60 and 61 of the survey aforesaid intersects said river; thence south 42 deg. 30 min. west following the line between sections 60 and 61 and between sections 59 and 62 and 58 and 63 to

the western boundary line of said rancho at which point sections 58, 63 and 64 corner, thence south 13 deg. 45 min. east along said western boundary line to an established corner in said line, and thence south 6 deg. 30 min. along said western boundary line to the place of beginning on the N. bank of said Cottonwood Creek, which said part of said rancho was set apart and reserved from said sale. . . .''

No evidence of whatsoever nature was introduced into the record identifying and locating the particular land embraced within the foregoing description. The map of the private survey declared in the foregoing to have been made by Reading of the land reserved from said sale, a copy of which, it is declared in said deed, ''is of record in the office of the County Recorder of said County of Shasta,'' was not offered or received in evidence. There is not, as we have declared, the slightest proof, either oral or documentary, which even remotely shows that the premises in dispute are not within that portion of the grant reserved from the sale to Haggin.

The burden rested upon the plaintiff to establish his title to the premises by sufficient evidence. He sought to deraign title from and through the patent from the general government to Reading. The deed under which Haggin became the owner of the grant reserved certain portions thereof from the sale to Haggin, and it was the duty of, and incumbent on, plaintiff, in order to trace his title to and identify it with the Haggin title, to show that the lots were not within the excepted portion. (*Corinne Mill Co.* v. *Johnson,* 156 U. S. 574, [15 Sup. Ct. Rep. 409]; *Maxwell Land Co.* v. *Dawson,* 151 U. S. 586, [14 Sup. Ct. Rep. 458]; *Reusens* v. *Lawson,* 91 Va. 226, [21 S. E. 356]; *Webb* v. *Phillips,* 80 Fed. 959, [26 C. C. A. 272]; *Harman* v. *Stearns,* 95 Va. 71, [27 S. E. 605].) His failure to do this leaves a missing link in his chain of title. The courts cannot take judicial notice of the exact location of the boundary lines of the lands included within the reserved portion. (*Goodwin* v. *Scheerer,* 106 Cal. 690, [40 Pac. 18].) So far as the record discloses and the knowledge gained therefrom, the very land excepted from the sale may include the lots in dispute. If so, of course the plaintiff cannot establish title to them, for the source of his title is Haggin's title, and upon that title he must stand or fall.

The findings are vague and indefinite as to the exact location of the lots with reference to the granted right of way of the railroad company. The evidence is equally so. The official map of the city of Redding, filed for record in the year 1890 (upon which no scale is indicated), furnishes the only evidence relative to the location of the premises in dispute, and even this is far from showing whether the lots are within the one hundred feet originally granted to the company as a right of way, or without the exterior boundaries thereof, or partly within and partly without said right of way. The map, in fact, does not show the right of way of the company with the clearness and distinctness necessary to constitute it satisfactory evidence upon the point. Nor does it show upon what portions of the lots, if upon any part thereof, the stockyards and corral and the buildings are situated, or whether they are partly or entirely within the granted right of way of the company. It is practically impossible to determine from the findings, even viewed in the light of all the evidence presented by the records before us, whether the judgment includes a portion of the company's right of way as granted to it by Haggin. A blue-print, made by and under the direction of the company's engineers, and received in evidence, shows the stock corral and the buildings to be situated partly within the company's granted right of way and partly without; but whether the court accepted or rejected the evidence thus produced we are unable to determine from its findings. True, the plaintiff declares that he lays no claim to any portion of the one hundred feet of which the granted right of way consists, but the evidence and findings are, as we have seen, so uncertain that it is impossible to determine even by reasonable approximation where the easterly line of said right of way is located. It is manifest that if the easterly line of the right of way runs through and takes in a portion of the lots as they are described in the complaint, then title to such portion of said lots could not vest in plaintiff. It is said in the case of *Porter* v. *Counts,* 6 Cal. App. 550, [92 Pac. 655]—a case very much similar to this as to the general nature of the evidence, findings and judgment—that "the premises should be so described that the record will furnish evidence of the limits to which title is established by the judgment, as well as to point out to the

8 Cal. App.—5

·sheriff who serves the writ of possession the extent and lo-
cation of the land recovered'' (citing *Davis* v. *Judge,* 44 Vt.
500, and *Bricken* v. *Cross et al.,* 140 Mo. 166, [41 S. W. 735].)

The language of the finding and of the judgment as to the
description of the land is a repetition of that contained in the
complaint, and is too general to furnish any definite idea of
the exact location of the boundary lines of the lots. This is
obviously insufficient. In order to give stability to the judg-
ment, it and the corresponding findings should describe the
land with such definiteness as to enable the parties to know,
from such description, the precise limits or the location of
the boundary lines thereof. (*Porter* v. *Counts, supra; Shaw*
v. *Hill,* 79 Mich. 86, [44 N. W. 422]; *Wickersham Bank-
ing Co.* v. *Rice,* 137 Cal. 506, [70 Pac. 546].)

Measured by these tests, the findings and judgments in the
cases at bar cannot for a moment be upheld.

Upon the point that the railroad company has acquired a
title by prescription or adverse possession to three hundred
feet of land adjoining and contiguous to the one hundred
feet right of way granted to it by Haggin, we do not feel
called upon to express an opinion, since, as we have seen,
it is impossible to ascertain from the findings and judgment
whether the lots in controversy constitute a part of that por-
tion of the grant expressly reserved from sale by the deed
to Haggin, or are even within or without the boundaries of
the granted right of way. If they are within the one or the
other, or both, then plainly the question of whether the com-
pany has acquired a prescriptive title to an additional three
hundred feet to its original right of way through Redding
becomes immaterial. This much may be said, however, that if,
upon a retrial, it is found that the land or any portion thereof
upon which the *stock corral* is situated is without the limits
of the granted right of way, then the undisputed testimony
disclosed by the record clearly shows that the railroad has
acquired title to so much of such land as is thus occupied by
adverse possession.

In this connection it is to be observed that, according to the
evidence, the railroad company paid taxes on a four hundred
feet right of way from and including the year 1898 to and
including the year 1903, and W. W. Douglass, deputy state
controller, testified that the company had paid all the taxes
levied and assessed by the state board of equalization against

the right of way in the town of Redding of the Central Pacific Railroad Company and its successors for all the years from and including the year 1880 to and including the year 1902. It will be remembered that the width of the right of way of the company in Redding was specified in the assessment by the state board of equalization as four hundred feet during all the years, with the exception of two (1892-1894), from and including the year 1891 to and including the year 1903. The undisputed testimony shows that the land used as the stock *corral* was inclosed for upward of thirty years prior to the commencement of this action.

There is nothing in the point suggested by the respondent, so far as the stock *corral* is concerned, that the railroad company cannot acquire a prescriptive title to land devoted by it to a .use not within the essential purposes of the corporation. A stock corral is as necessary an adjunct to the transportation business of a railroad corporation as a depot building or a ticket office. In fact, a stock corral is absolutely necessary for the proper care of animals which are presented for carriage from point to point by a railroad company, and also to facilitate the loading and unloading of such animals in and from the cars.

In rebuttal, the plaintiff offered in evidence and the court, over the objection of the defendants, allowed to go into the record certain letters passing between the county assessor of Shasta county and one E. B. Ryan. The assessor, in a letter addressed to the ''Central Pacific Railroad Company, San Francisco,'' and dated March 12, 1904, asked said company to designate upon a blank assessment list inclosed in said letter such lands as the company owned in Redding, and to return the same to the assessor. It was suggested in that letter by the assessor that the block known as the ''Stockyard Block'' was claimed by ''Hill and Hart.'' Said Ryan, evidently in reply to said letter, addressed a letter over his signature to the assessor in the following language: ''Your letter addressed to the Central Pacific Railroad Company is referred to me. In the matter of the stockyard block in the City of Redding, we referred the matter to our engineering department and they advised me that the stockyard does not belong to the Central Pacific Railway Company, but probably, as you say, belongs to Messrs. Hill and Hart, hence we do not claim the property.'' On May 29, 1904, Ryan wrote

to the assessor again, saying, among other things, that "since my letter to you, I have ascertained that we do claim said block, and have paid taxes on the same." But it is declared by the respondent that, as the appellants have failed to refer to and point out in their briefs the reasons upon which they base the claim that the rulings of the court are erroneous, said alleged errors are deemed to be waived, under the rule of this court, and that, therefore, the same cannot be reviewed. The rule referred to is designed for the convenience and aid of the reviewing courts, and to save such courts the time and trouble (which should rest upon the attorneys) of searching the record of a case for the purpose of determining whether complaints made by counsel are well founded or not. Where, as here, however, an alleged error is specified in the assignments of error, and it is apparent from only the necessary examination of the record that such error is prejudical, we do not understand the rule to preclude a consideration of the same and order a reversal therefor. The cases of *Tapscott* v. *Lyon,* 103 Cal. 312, [37 Pac. 225], and *People* v. *Gibson,* 106 Cal. 475, [39 Pac. 864], cited by counsel for respondent, justify, under the rule, a refusal by the court to notice alleged errors where the reasons why they are complained of are not pointed out in the briefs. But there is nothing said in those cases from which it may be gathered that the supreme court intended to lay down a "hard-and-fast" interpretation of the rule, of which the most that can be said, in our opinion, is that if an appellate court desires to act upon the presumption of waiver of points not pointed out in the briefs, it may do so, and, *e converso,* if it is disposed to take up such points at the expense of the labor and trouble which the attorneys should have attended to, there is no reason why it should not do so. Moreover, the error under consideration was pointed out in the oral argument, and we think this is sufficient. The letters referred to were, as stated, objected to, and the rulings, to which exceptions were reserved, assigned in the record as error.

An examination of the record for the purpose of determining the main points discussed in the briefs was only necessary to demonstrate the utter incompetency of the letters as evidence, and their prejudicial effect upon the railroad company, viewed by the light of the circumstances under which they were admitted. There is no evidence to show who

"E. B. Ryan" is, and if it may be assumed from anything contained in the letters that he is an official of the company, there is nothing to show what particular duties are assigned to him as such, or whether, whatever his duties, he has any authority to bind the railroad company by his declarations. So far as the record discloses, "E. B. Ryan" may be a perfect stranger to the company, or an employee thereof having no authority to act and speak for and bind the company in the matter involved here.· If it had been shown that Mr. Ryan was an official of the company, and as such authorized to bind it by declarations or negotiations involving its property rights, a much different question would be presented. The letters having undoubtedly been admitted upon the theory that Mr. Ryan was authorized to speak for the company upon the subject to which they relate, it may safely be assumed, under the circumstances, that the court considered the first letter as containing a significant authoritative admission, negativing the claim made by the company in these actions. It was, therefore, as stated, prejudicial.

The position of the defendants who erected buildings on portions of the lots in dispute that the circumstances displayed by the record are such as to entitle them, in equity and good conscience, to compensation for the improvements thus bestowed by them upon the property, seems to be forceful, but beyond the scope of the records before us. These defendants, to have availed themselves of the equitable principle sought to be invoked, should have, by appropriate averments in their answers, tendered an issue upon the proposition. This they failed to do, and, therefore, as suggested, we are powerless to consider the point to any purpose.

For the foregoing reasons, the judgment and order are reversed.

Chipman, P. J., and Burnett, J., concurred.